

**Filed**
Supreme Court of Guam, Clerk of Court

# IN THE SUPREME COURT OF GUAM

## PEOPLE OF GUAM,
Plaintiff-Appellee,

**v.**

## DANILO SANTOS MORALES,
Defendant-Appellant.

Supreme Court Case No.: CRA19-004
Superior Court Case No.: CF0744-16

## OPINION

## Cite as: 2022 Guam 1

Appeal from the Superior Court of Guam
Argued and submitted on May 15, 2020
Via Zoom video conference

Appearing for Defendant-Appellant:
Peter C. Perez, *Esq.*
Law Office of Peter C. Perez
DNA Bldg.
238 Archbishop Flores St., Ste. 802
Hagåtña, GU 96910

Appearing for Plaintiff-Appellee:
Marianne Woloschuk, *Esq.*
Assistant Attorney General
Office of the Attorney General
Prosecution Division
590 S. Marine Corps Dr.
Tamuning, GU 96913



**E-Received**
2/23/2022 4:15:26 PM

BEFORE: F. PHILIP CARBULLIDO, Chief Justice; ROBERT J. TORRES, Associate Justice; and KATHERINE A. MARAMAN, Associate Justice.

**MARAMAN, J.:**

**[1]**      Defendant-Appellant Danilo Santos Morales appeals his conviction for multiple charges of criminal sexual conduct involving a minor victim.  On appeal, Morales argues the trial court erred when it found the minor competent to testify, allowed the minor to testify via closed-circuit television, and permitted certain jury instructions.  Morales also argues the court erred by allowing hearsay, and he claims there is insufficient evidence to support his convictions.  We reverse in part and affirm in part the judgment of the trial court.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

**[2]**      Danilo Santos Morales was indicted, and later found guilty, of one count of First Degree Criminal Sexual Conduct for intentionally engaging in sexual penetration with V.T., a minor under fourteen years old, violating 9 GCA § 25.15(a)(1) and (b) (2005), by causing his finger to enter V.T.'s vagina; and three counts of Second Degree Criminal Sexual Conduct for intentionally engaging in sexual contact with V.T., a minor under fourteen years old, violating 9 GCA § 25.20(a)(1) and (b), by touching V.T.'s genitals (count one), buttocks (count two), and breast area (count three).

**[3]**      Before trial, Morales submitted his request for jury instructions.  His first proposed jury instruction, titled "Instruction No. 1: Presumption of Innocence, Burden of Proof, and Reasonable Doubt," combined 8 GCA § 90.23(a), defining reasonable doubt, and 1A Kevin F. O'Malley et al., *Federal Jury Practice and Instructions* § 12.10 (6th ed. 2008).  Record on Appeal ("RA"), tab 64 at 1-2 (Req. Jury Instrs., Mar. 20, 2018).  The trial court instead discussed the presumption of innocence, burden of proof, and reasonable doubt in instructions: No. 2A Burden of Proof –

Reasonable Doubt; No. 2B People Have Burden to Prove Each and Every Element of an Offense Charged; No. 3D Circumstantial Evidence – Intent or Mental State; No. 3E "Inference" Defined (Presumptions); No. 3F "On or About" Explained; Nos. 6A through 6D; and No. 3H Improper Considerations: Race, Religion, National Origin, Gender or Age.  RA, tab 117 (Jury Instrs., Nov. 16, 2018).

**[4]**     The People filed a pre-trial motion *in limine* requesting the trial court permit V.T. to testify via closed-circuit television ("CCTV").  V.T.'s behavioral therapist, Dr. Lilli Ann Perez, testified on the potential effects seeing Morales could have on V.T.'s ability to speak at trial, expressing her concern about "what kinds of emotions, what kinds of sensitivities and vulnerabilities would be triggered . . . if [V.T.] had to face [Morales]."  Transcript ("Tr.") at 8 (Evidentiary Hr'g, Oct. 29, 2018).  Citing Dr. Perez's testimony, the prosecutor argued V.T. may shut down on the stand and become unwilling to talk because she had been emotionally affected by the events that took place between her and Morales.  The prosecutor also noted that V.T. was timid during her first few sessions with Dr. Perez and had spoken to the prosecutor only in the presence of Dr. Perez during a play therapy session.  Defense counsel did not object to V.T. testifying via CCTV.

**[5]**     The court granted the motion, finding:

> [B]ased on testimony of Dr. Perez, it is likely that the minor will suffer severe emotional distress if she's required to testify in the presence of the defendant, and which may trigger her vulnerabilities about her family life and missing her grandmother and that may result in her inability to communicate on the stand.

*Id.* at 16-17.

**[6]**     V.T. was six years old at the time of trial.  Because of her young age, the court conducted a *voir dire* of V.T. to assess her competency to testify.  The court, based on this voir dire, determined V.T. was competent to testify.  The court noted that "perhaps due to her age, [V.T.] says that . . . she doesn't, her classmates usually don't lie to the teacher so there's never an issue."

Tr. at 58 (Jury Trial, Nov. 7, 2018). The court then explained that V.T.'s answers to questions during the *voir dire*, such as her understanding of what was true and false about certain drawings, demonstrated her understanding of a truth and lies and the repercussions of lying in court. The court then asked defense counsel if there were "any issues" with V.T.'s competency, to which counsel responded "no." *Id.* V.T. testified via CCTV.

[7]       At the close of the People's case, Morales moved for a judgment of acquittal. The trial court denied the motion. The jury found Morales guilty of all charges. A judgment of conviction was entered, and Morales timely appealed.

## II.  JURISDICTION

[8]       This court has jurisdiction over an appeal from a final judgment of conviction. 48 U.S.C.A. § 1424-1(a)(2) (Westlaw through Pub. L. 117-80 (2021)); 7 GCA §§ 3107, 3108(a) (2005); 8 GCA §§ 130.10, 130.15(a) (2005).

## III.  STANDARD OF REVIEW

[9]       Generally, we review evidentiary rulings which infringe on constitutional rights, such as alleged violations of the Confrontation Clause, *de novo*. *See People v. Diego*, 2013 Guam 15 ¶ 8; *United States v. Macias*, 789 F.3d 1011, 1017 (9th Cir. 2015) (citing *United States v. Bustamante*, 687 F.3d 1190, 1193 (9th Cir. 2012)). When a defendant fails to object to an evidentiary error at trial, we review for plain error. *People v. Finik*, 2017 Guam 21 ¶ 32.

[10]      The competency of a child to testify "is a matter resting largely in the discretion of the trial court." *Taitano v. Gov't of Guam*, 187 F. Supp. 75, 76 (D. Guam App. Div. 1960). When a defendant fails to object to a child witness's competency to testify, we review for plain error. *See State v. Morgan*, 509 N.E.2d 428, 430 (Ohio Ct. App. 1986).

**[11]**     When a defendant raises no objection to jury instructions at trial, we will not reverse absent plain error. *People v. De Soto*, 2016 Guam 12 ¶ 18 (quoting *Diego*, 2013 Guam 15 ¶ 23).

**[12]**     When a party does not object during trial to the admission of evidence, the issue is also reviewed for plain error. *People v. Roby*, 2017 Guam 7 ¶ 18 (quoting *Ramiro v. White*, 2016 Guam 6 ¶ 17).  If a party does object to an evidentiary ruling, we review a trial court's decision to admit evidence for an abuse of discretion. *People v. Chinel*, 2013 Guam 24 ¶ 18.  "Where the trial court has abused its discretion in admitting certain evidence, the proper standard for evaluating whether reversal is required is the harmless error standard." *People v. Pugh*, 2018 Guam 14 ¶ 16 (citing *De Soto*, 2016 Guam 12 ¶ 43).

**[13]**     "Where a defendant raise[d] the issue of sufficiency of the evidence by a motion for judgment of acquittal, we review the trial court's denial of the motion *de novo*." *People v. Song*, 2021 Guam 14 ¶ 16 (alteration in original) (quoting *People v. Aguon*, 2020 Guam 24 ¶ 11).

## IV.  ANALYSIS

### A.  The Use of CCTV Testimony Did Not Violate Morales's Sixth Amendment Confrontation Clause Rights Because of Morales's Waiver

**[14]**     Morales appeals the trial court's decision allowing V.T. to testify via CCTV.  Appellant's Br. at 17 (Sept. 16, 2019).  He argues the evidence does not support a finding that V.T. would have suffered serious emotional distress because of Morales's presence in the courtroom resulting in V.T.'s inability to reasonably communicate during trial. *Id.*  Morales suggests such a finding was required under *People v. Callahan*, 2018 Guam 17 ¶¶ 20-22. *Id.*  We agree with Morales; the evidence does not support a finding that V.T. would have suffered serious emotional distress had she testified in the courtroom.  Morales, however, waived his right to confront V.T., as his counsel did not object at the evidentiary hearing.

**[15]**    The Confrontation Clause of the Sixth Amendment, applicable to Guam through the Organic Act, guarantees all criminal defendants the right "to be confronted with the witnesses against him." U.S. Const. amend. VI; 48 U.S.C.A. § 1421b(g), (u) (Westlaw through Pub. L. 117-80 (2021)). Under Sixth Amendment jurisprudence, defendants have the right to be physically present and face-to-face with witnesses testifying against them. *Maryland v. Craig*, 497 U.S. 836, 849-50 (1990). *But see* discussion *infra* (noting defendant's right to confrontation is not absolute).

**[16]**    *Callahan* establishes a three-prong test for a court to consider when ordering the testimony of a child victim be taken outside the courtroom and shown in the courtroom using CCTV. 2018 Guam 17 ¶ 20. "The trial court must determine that a particular child (1) will suffer serious emotional distress (2) as a result of the defendant's presence (3) resulting in the child's inability to reasonably communicate." *Id.* (citing Guam R. Evid. 804.1(a)(2); *Craig*, 497 U.S. at 856). The first prong, a child's emotional distress, must be "more than *de minimis*," and it must be caused by the defendant specifically, not just the courtroom setting. *Craig*, 497 U.S. at 838. While the U.S. Supreme Court has not decided the "minimum showing of emotional trauma required," the test "is satisfied 'at least' by a showing that 'such trauma would impair the child's ability to communicate.'" *United States v. Carrier*, 9 F.3d 867, 869 (10th Cir. 1993) (quoting *Craig*, 497 U.S. at 857). Here, Dr. Perez did not express that V.T. would suffer serious emotional distress because of Morales's presence. Rather, her testimony emphasized the "emotions, . . . sensitivities and vulnerabilities" that might be triggered if V.T. faced Morales, particularly when thinking about the connection between Morales and missing her great-grandmother. Tr. at 8 (Evidentiary Hr'g). While this may lead to V.T. shutting down on the stand and feeling reluctant to speak, it does not meet the standard under *Callahan* and the respective evidentiary rule of serious emotional distress resulting in the child's inability to reasonably communicate.

**[17]**     The confrontation right, however, is not absolute.  *Craig*, 497 U.S. at 836; *see also People v. Kotto*, 2020 Guam 4 ¶ 16 (elaborating on limits to defendant's right to confront as he pleases). An individual may waive the constitutional right to confrontation if the waiver is intentional, intelligent, knowing, and voluntary.  *See Brookhart v. Janis*, 384 U.S. 1, 4-5 (1966); *see also People v. Guerrero*, 2017 Guam 4 ¶ 25.  Waiver may be explicit or implicit, and it may be implied by the conduct of the defendant or defense counsel.  *See Brookhart*, 384 U.S. at 4-6; *Wilson v. Gray*, 345 F.2d 282, 286-87 (9th Cir. 1965).

**[18]**     "[C]ourts indulge every reasonable presumption against waiver of fundamental constitutional rights and . . . do not presume acquiescence in the loss of fundamental rights." *Guerrero*, 2017 Guam 4 ¶ 25 (omission in original) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)).  Only minimal knowledge, however, need be shown when there is a waiver implied from conduct.  *See Cohen v. Senkowski*, 290 F.3d 485, 491 (2d Cir. 2002) (quoting *United States v. Nichols*, 56 F.3d 403, 416 (2d Cir. 1995)).  This may be evidenced by presence in the court during a proceeding and detailed discussion in the court about the proceeding and its consequences.  *See, e.g.*, *Grayton v. Ercole*, 691 F.3d 165, 177 (2d Cir. 2012).

**[19]**     Counsel may waive the accused's right to confrontation and cross-examination of adverse witnesses for trial tactic or strategy.  *See Wilson*, 345 F.2d at 286-87 (collecting cases); *People v. Kitano*, 2011 Guam 11 ¶ 39; *Grayton*, 691 F.3d at 175.  Thus, an implied waiver may occur without any objection from the defense and with a reasonably prudent and wise strategy behind the waiver. *See*, *e.g.*, *Wilson*, 345 F.2d at 286-87.  When defense counsel waives the accused's right to confrontation on their behalf, we look to any objecting behaviors of the defendant and the prudence of counsel's strategy.  *See id.*

[20]    Morales's counsel cross-examined Dr. Perez during the evidentiary hearing and did not object to using CCTV for V.T.'s testimony.  After cross-examination, counsel for both sides and the court discussed openly the procedure to be used if the court allowed CCTV testimony. Counsels and the court openly discussed which room would be used for the testimony, the logistics for objections during the CCTV testimony, and the location of the defendant and the jurors during the testimony.  During this discussion, the trial court asked defense counsel: "[I]s the position of Mr. Morales still the same, not objecting to the closed circuit or has that changed?"  Tr. at 14 (Evidentiary Hr'g).  Defense counsel responded that Morales did not object nor had he expressed any prior objection to the CCTV.  Defense counsel also stated: "[T]here's not really much to object to . . . so I don't think there will be really much use or anything for me to come out [to the room where V.T. will testify]."  *Id.* at 17.

[21]    Based on our review of the evidentiary hearing, Morales, through his counsel, implicitly waived his right to confrontation.  The evidentiary hearing clarified V.T. would testify via CCTV, and no objections were made, even after the judge specifically asked Morales's counsel if there were any objections.  Morales himself was present throughout the evidentiary hearing and at trial, but he did not object to using  CCTV at any point.  Moreover, Morales's counsel implied there may be tactical reasons to allow the CCTV testimony.  *See id.*  Given the clear explanation of procedures and inquiry for objections, Morales waived his right to confrontation.

[22]    Morales argues the CCTV testimony violated his constitutional rights because during the evidentiary hearing with Dr. Perez, there was insufficient evidence to establish that if V.T. testified in the courtroom, she would have suffered emotional distress because of Morales's presence, which would have resulted in V.T.'s inability to reasonably communicate.  Appellant's Br. at 15-18 (citing *Callahan*, 2018 Guam 17 ¶ 22).  While we agree with Morales that the requirements

under Guam Rule of Evidence 804.1(a)(2), as explained in *Callahan*, were not met, we uphold the trial court's decision to allow V.T. to testify by CCTV because of Morales's waiver.

## B. V.T. Was Competent to Testify at Trial

[23]    Morales challenges the trial court's finding that V.T. was competent to testify, pointing to statements in the record which purportedly show that V.T. did not understand the meaning of telling the truth or the oath taken by a witness. Appellant's Br. at 19-20. The People respond that V.T. was competent to testify, as she showed an understanding of the consequences of lying, could tell the truth from a lie, and promised to tell the truth. Appellee's Br. at 24 (Nov. 15, 2019). Because Morales did not object to V.T.'s competency, we review for plain error. *See Morgan*, 509 N.E.2d at 430; *see also Finik*, 2017 Guam 21 ¶ 32.

[24]    Turning to the first prong of plain error review, we begin by assessing whether the trial court made an error. *See People v. Gargarita*, 2015 Guam 28 ¶ 11 (quoting *People v. Felder*, 2012 Guam 8 ¶ 11). Guam Rule of Evidence 601 states: "Every person is competent to be a witness except as otherwise provided in these rules or by the laws of Guam." Guam R. Evid. 601. Before testifying, each witness must declare that they will testify truthfully, by oath or affirmation. Guam R. Evid 603. Preliminary questions about the qualification of a person to be a witness rests with the trial court. *See* Guam R. Evid. 104(a).

[25]    There are various tests to assess a child witness's competency. While we have yet to fully address this issue, other jurisdictions have considered this issue at length. Some jurisdictions, such as Minnesota, require a two-part test to determine if a child witness is competent to testify. *See State v. Cermak*, 350 N.W.2d 328, 331-32 (Minn. 1984). The test requires that the witness understand the obligations of taking an oath and be capable of correctly narrating the facts to which his or her testimony is related. *Id.* The latter inquiry attempts to ascertain not just a witness's

ability to accurately narrate facts, but also to show whether he or she has the mental capacity to have had an accurate impression of the events as they occurred and express in words this memory of the occurrence. *See State v. Lanam*, 459 N.W.2d 656, 659-60 (Minn. 1990); *State v. Wyse*, 429 P.2d 121, 123 (Wash. 1967); *State v. Cobb*, 610 N.E.2d 1009, 1010 (Ohio Ct. App. 1991); *State v. Glenny*, 656 P.2d 990, 991-92 (Utah 1982) (per curiam); *Simmers v. State*, 943 P.2d 1189, 1199 (Wyo. 1997).

[26]     Other jurisdictions look to whether the child witness understands the difference between telling a truth and telling a lie, and that the child understands they could be punished if they tell a lie. *See*, *e.g.*, *Oldham v. State*, 467 N.E.2d 419, 422 (Ind. Ct. App. 1984). For example, Hawaii has created a three-prong test that ascertains if the child: (1) understands that they will be punished if they lie; (2) can affirm or declare that they will tell the truth; and (3) understands the nature of their affirmation or declaration. *Territory v. Martin*, 39 Haw. 100, 105 (1951). Trial courts also may look to the child's ability to answer questions about their life—such as their age, school, and names of relatives—to determine whether the child is competent to testify. *See Commonwealth v. Hunzer*, 868 A.2d 498, 507-08 (Pa. Super. Ct. 2005).

[27]     In *McDaniel v. State*, the Court of Appeals of Georgia held that a lower court did not err in determining that a six-year-old witness was competent to testify even if the child stated that he did not know what it meant "to tell the truth." 583 S.E.2d 141, 143 (Ga. Ct. App. 2003). There, the appeals court found no error in finding the child competent because the child: (1) understood what it meant to tell a lie; (2) knew that he would be punished for lying; and (3) promised not to lie. *Id.* at 143 n.6. To determine whether a child understands the difference between telling the truth and a lie, some jurisdictions deem it appropriate for a trial court to ask simple and

uncomplicated questions aimed at demonstrating the concept of truth and falsehood. *See*, *e.g*, *Jones v. State*, 980 A.2d 469, 479-80 (Md. 2009).

[28] While we do not find it necessary at this time to adopt any specific test to determine child witness competency, our review of the record demonstrates that V.T. is competent to testify. During the trial court's *voir dire*, V.T. demonstrated an understanding she could be punished for lying, which she expressed when she agreed that a person who told a lie would get in trouble. While V.T. did not appear at the onset to understand what it meant to "tell the truth," the trial court provided V.T. with various drawings to determine her ability to distinguish the truth from a lie. Further, V.T. appeared to promise to tell the truth and later reiterated her promise on direct examination. The trial court further asked V.T. questions about her age, birthday, school, teacher, family, and hobbies. While some of the record during these questions is indiscernible,[1] the portions material to the competency determination are discernible, and we can establish from those sections that the trial court did not err in finding V.T. competent to testify. Finding no error, we need not address the remaining factors of a plain error analysis. *See People v. Baluyot*, 2016 Guam 20 ¶ 16.

## C. The Jury Instructions Were Not Erroneous

[29] Morales claims the trial court violated his Fifth and Sixth Amendment rights when it purportedly failed to provide an instruction he requested as to the presumption of innocence and the People's burden to prove its case beyond a reasonable doubt. Appellant's Br. at 20-21. His argument hinges on the alleged omission of an instruction on the presumption of innocence. *Id.* at

---

[1] In his reply brief, Morales suggests that reversal is required because the indiscernible portions of the record relate to material omissions on the fundamental issue of competence. Appellant's Reply Br. at 4 (Nov. 26, 2019). In support, Morales offers no authority for this proposition. The People addressed this argument in their opposition brief, arguing that the record adequately establishes V.T.'s competency, even if some portions were indiscernible. Appellee's Br. at 23. Based on our review, we agree with the People that the discernible portions of the record sufficiently demonstrate V.T.'s competency.

22. In response, the People argue that a presumption of innocence instruction is not always constitutionally required and, even if such an instruction was required, there was no error because the trial court did instruct the jury as to the presumption of innocence. Appellee's Br. at 26-27. We agree with the People.

[30] Because Morales raised no objection to the jury instructions at trial, we will not reverse absent plain error. *See* Tr. at 81 (Jury Trial, Nov. 14, 2018) ("I think that the jury instructions are fine, Your Honor."); *see also De Soto*, 2016 Guam 12 ¶ 18; *Felder*, 2012 Guam 8 ¶ 8.

[31] Under the first prong of plain error review, we assess whether there was an error. *See Gargarita*, 2015 Guam 28 ¶ 11 (quoting *Felder*, 2012 Guam 8 ¶ 11). "We consider whether the proffered instructions accurately stated the relevant law under a *de novo* standard." *Id.* ¶ 12 (citing *Diego*, 2013 Guam 15 ¶ 9). When reviewing jury instructions, "a single jury instruction should not be judged in artificial isolation. Instead, instructions should be considered and reviewed as a whole." *People v. Jones*, 2006 Guam 13 ¶ 28 (citations omitted). An instruction that may seem ambiguous "can be cured when read in conjunction with other instructions." *Id.* (quoting *Jones v. United States*, 527 U.S. 373, 391 (1999)). Accordingly, "[w]e review jury instructions as a whole rather than in isolation." *People v. Cox*, 2018 Guam 16 ¶ 16 (citing *Gargarita*, 2015 Guam 28 ¶ 12).

[32] Here, there was no error because the trial court properly instructed the jury as to the presumption of innocence, even if it did not use verbatim the instruction proposed by Morales. Morales's proposed jury instruction stated:

INSTRUCTION NO. 1

PRESUMPTION OF INNOCENCE,
BURDEN OF PROOF, AND REASONABLE DOUBT

I instruct you that you must presume the defendant to be innocent of the crimes charged. Thus the defendant, although accused of crimes in the indictment, begins the trial with a "clean slate"—with no evidence against him. The indictment, as you already know, is not evidence of any kind. The defendant is, of course, not on trial for any act or crime not contained in the indictment. The law permits nothing but legal evidence presented before the jury in court to be considered in support of any charge against the defendant. The presumption of innocence alone, therefore, is sufficient to acquit the defendant.

The burden is always upon the prosecution to prove guilt beyond a reasonable doubt. This burden never shifts to a defendant, for the law never imposes upon a defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence. The defendant is not even obligated to produce any evidence by cross-examining the witnesses for the government.

It is not required that the government prove guilt beyond all possible doubt. The test is one of reasonable doubt. Reasonable doubt is defined as follows: It is not a mere possible doubt, because everything relating to human affairs, and depending on moral evidence, is open to some possible or imaginary doubt. It is that state of the case which, after the entire comparison and consideration of all the evidence, leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction, to a moral certainty, of the truth of the charge.

Unless the government proves, beyond a reasonable doubt, that the defendant has committed each and every element of an offense charged in the indictment, you must find the defendant not guilty of that offense. If the jury views the evidence in the case as reasonably permitting either of two conclusions—one of innocence, the other of guilt—the jury must, of course, adopt the conclusion of innocence.

RA, tab 64 at 1-2 (Req. Jury Instrs.).

[33]     The trial court declined to use the proposed instruction, which Morales did not object to, and instead used its own instructions as to the presumption of innocence and the People's burden to prove its case beyond a reasonable doubt. These specific instructions were in: Jury Instruction No. 2A (Burden of Proof – Reasonable Doubt), Jury Instruction No. 2B (People Have Burden to Prove Each and Every Element of an Offense Charged), Jury Instruction No. 3D (Circumstantial Evidence – Intent or Mental State), Jury Instruction No. 3E ("Inference" Defined (Presumptions)), Jury Instruction No. 3F ("On or About" Explained), Jury Instruction No. 3H (Improper

Considerations: Race, Religion, National Origin, Gender or Age), and Jury Instructions 6A through 6D.

[34]    In Jury Instruction No. 3H, the trial court instructed: "All persons are entitled to the presumption of innocence, and the People have the same burden of proof as to all persons." RA, tab 117 at Instr. 3H (Jury Instrs.). And, in Jury Instruction Nos. 2A and 2B, the trial court explained the People's burden to prove each element of the offenses charged beyond a reasonable doubt, including the definition for reasonable doubt, which tracked the definition codified in 8 GCA § 90.23. The People's burden was emphasized repeatedly in other instructions, including the instructions outlining the essential elements for each offense charged. While the trial court did not use Morales's proposed instruction, our review of the jury instructions, in their entirety, show that the trial court sufficiently instructed the jury as to the presumption of innocence and the People's burden to prove its case beyond a reasonable doubt.

[35]    "[S]o long as the court instructs the jury on the necessity that the defendant's guilt be proved beyond a reasonable doubt, the Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof." *Victor v. Nebraska*, 511 U.S. 1, 5 (1994) (citations omitted). If the instructions, taken in their entirety, fairly and accurately convey the meaning of reasonable doubt, then the instructions are proper. *United States v. Robinson*, 546 F.2d 309, 314 (9th Cir. 1976); *see also People v. Aldan*, 2018 Guam 19 ¶ 14 ("Generally, a jury instruction that accurately tracks the language of the statute is sufficient to inform the jury of its duties." (citing *Diego*, 2013 Guam 15 ¶ 28; *People v. Demapan*, 2004 Guam 24 ¶ 20)). Because the trial court sufficiently instructed the jury as to the presumption of innocence and the People's burden to prove its case beyond a reasonable doubt, we find no error with the trial court's decision to provide the related instructions instead of Morales's proposed instruction.

**D.  Hearsay Statements**

[36]	Morales claims that portions of the testimonies of V.T.'s mother and father, Officer Joseph Aguon, Officer Joel Terlaje, Dr. Milliecor Fojas, and Dr. Lilli Ann Perez constituted inadmissible hearsay.  Appellant's Br. at 29-34.  The People maintain that the alleged hearsay statements of Dr. Fojas and Dr. Perez were admissible under the medical diagnosis and treatment exception to hearsay.  Appellee's Br. at 33-34.  All of the other alleged hearsay statements, the People argue, were cumulative and therefore harmless.  *Id.* at 34.

[37]	Along with the testimony, a recording of a conversation between V.T. and her mother was played for the jury.  Morales argues this recording was inadmissible hearsay and not properly authenticated under Guam Rule of Evidence 901.  Appellant's Br. at 30-31.  The People rebuff this characterization, arguing that the recording was admissible as Morales had opened the door for the evidence by creating a misleading impression of its contents.  Appellee's Br. at 32-33.

[38]	We review the admission of hearsay statements without objection for plain error.  *Roby*, 2017 Guam 7 ¶¶ 17-18.  When an error is identified, the defendant bears the burden of establishing that the error was prejudicial.  *See People v. Fegarido*, 2014 Guam 29 ¶ 41 (quoting *People v. Mendiola*, 2010 Guam 5 ¶ 24); *Roby*, 2017 Guam 7 ¶ 39.  If the record does not reflect that the defendant was prejudiced by the error, "the government will prevail." *Fegarido*, 2014 Guam 29 ¶ 41 (quoting *People v. Quitugua*, 2009 Guam 10 ¶ 31).  If a party does object to an evidentiary ruling, we review a trial court's decision to admit evidence for an abuse of discretion.  *Chinel*, 2013 Guam 24 ¶ 18.  "Where the trial court has abused its discretion in admitting certain evidence, the proper standard for evaluating whether reversal is required is the harmless error standard." *Pugh*, 2018 Guam 14 ¶ 16 (citing *De Soto*, 2016 Guam 12 ¶ 43).  We review each of the alleged hearsay testimonies under the appropriate standard.

## 1. Testimony of V.T.'s mother

[39]    Morales argues the testimony of V.T.'s mother recounting statements made by V.T. on the day V.T. returned home from her great-grandmother's house following the incident is inadmissible hearsay. Appellant's Br. at 29-30. Because Morales did not object to V.T.'s mother's testimony, we review for plain error. We begin our plain error analysis by determining whether V.T.'s mother's hearsay testimony was erroneously admitted.

[40]    During trial, V.T.'s mother recounted statements V.T. made to her during a conversation after V.T. returned home from her great-grandmother's house. V.T.'s mother recalled V.T.'s reluctant demeanor during the conversation and stated that V.T. did not want to talk and kept wanting to leave. V.T.'s mother then testified that V.T. stated that "Papa Don"[2] had touched her "putt putt," "butt butt," and "soo soo" and those terms referred to the vaginal area, buttocks, and breast area, respectively. Tr. at 21 (Jury Trial, Nov. 7, 2018). Such statements were permissible as an exception to hearsay under Guam Rule of Evidence 803(2).

[41]    The excited utterance hearsay exception permits a hearsay statement if the statement relates "to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Guam R. Evid. 803(2). This exception "stems from a belief that a statement made during a moment of excitement and without the opportunity to reflect on the consequences of one's statement has greater indicia of truth and reliability than a similar statement offered in the relative calm of the courtroom." *People v. Jesus*, 2009 Guam 2 ¶ 35.

[42]    To admit a hearsay statement under the excited utterance exception there must be: "1) an event or condition startling enough to cause nervous excitement; 2) the statement relates to the startling event; and 3) the statement must be made while the declarant is under the stress of the

_____

[2] V.T.'s mother testified that the term "Papa Don" is how V.T. referred to Morales.

excitement caused by the event before there is time to contrive or misrepresent." *Id.* ¶ 36. Further, "there is no precise amount of time between the event and the statement beyond which the statement cannot qualify as an excited utterance." *United States v. Pursley*, 577 F.3d 1204, 1221 (10th Cir. 2009) (quoting *United States v. Ledford*, 443 F.3d 702, 711 (10th Cir. 2005), *abrograted on other grounds by Henderson v. United States*, 575 U.S. 622 (2015)); *see also United States v. Scarpa*, 913 F.2d 993, 1017 (2d Cir. 1990) (holding declarant's statements admissible after five to six hours under excited utterance exception). For child sexual assault, "courts must also be cognizant of the child's first real opportunity to report the incident" when considering any time lapse between the abuse and the declaration. *Morgan v. Foretich*, 846 F.2d 941, 947 (4th Cir. 1988). Other relevant circumstances include a child's age, the characteristics of the event, and the subject matter of the statements. *United States v. Rivera*, 43 F.3d 1291, 1296 (9th Cir. 1995).

[43] Based on the record, the first two requirements that the event or condition was startling enough to cause nervous excitement and that the statements relate to the startling event are satisfied; V.T.'s mother's testimony about V.T.'s statements directly relate to a traumatic and startling incident of child sexual assault. The third requirement is met; the statements were made while V.T. was under the stress of the excitement caused by the event before there was time to contrive or misrepresent. The statements were made within hours of the event, although the exact time is unknown. Because of other considerations such as V.T.'s young age, her emotional state during her conversation with her mother, and that it was V.T.'s first real opportunity to report the incident, V.T.'s statements to her mother upon returning home qualified as excited utterances under Rule 803(2). There was therefore no error in admitting this specific testimony.

[44] V.T.'s mother also testified as to a separate conversation with V.T. on some day following V.T.'s initial disclosure. V.T.'s mother testified that during this conversation, she asked V.T. if

Morales touched her with any instrument and that V.T. stated Morales used his "pinkie." Tr. at 29 (Jury Trial, Nov. 7, 2018). As Morales did not object to V.T.'s mother's testimony as to V.T.'s statement, we review for plain error and first determine whether the testimony was erroneously admitted.

[45]    Our review of the record shows the statement attributed to V.T. was made on some other day after V.T. had initially reported the events to her mother. Nor could we discern from the mother's testimony whether V.T., at the time of making the specific statement to her about the "pinkie," was under any stress of the excitement caused by the event. Considering the time lapse and the lack of other details about the context in which the statement was made, we find it difficult to conclude the statement admissible under Rule 803(2). As the testimony is not admissible under Rule 803(2), and the People do not argue that the statement was admissible under any other hearsay exception, we find the admission of the specific statement and related references to be error that is clear and obvious under current law.[3]

[46]    The third prong of the plain error analysis is whether the defendant's substantial rights were affected by the error. "To establish that an error affected substantial rights, a defendant must establish by '"a reasonable probability" that but for the claimed error the result of the proceeding would have been different.'" *People v. Reyes*, 2020 Guam 33 ¶ 25 (quoting *People v. Lessard*, 2019 Guam 10 ¶ 16). We find that Morales's substantial rights were affected by the error because: (1) his conviction for First Degree Criminal Sexual Conduct rested solely on the admission of V.T.'s mother's testimony as to a "pinkie"; and (2) no other substantive and admissible evidence

---

[3] Morales claims two other sets of statements were inadmissible hearsay as it relates to V.T.'s mother's testimony: (1) statements made on a Monday following V.T.'s initial disclosure, as to which her mother testified that "[V.T.] repeated the same exact thing she told me the day before," Tr. at 26 (Jury Trial, Nov. 7, 2018); and (2) V.T.'s mother's testimony that V.T. informed her that the touching happened in V.T.'s great-grandmother's apartment, *id.* at 33. The court declines to review these alleged hearsay issues because while Morales raised them in his brief, *see* Appellant's Br. at 7-8, 29-30 (Sept. 16, 2019), neither party engaged in a substantive analysis of these statements. *See, e.g.*, *People v. Quinata*, 1999 Guam 6 ¶¶ 22-27.

was elicited evidencing penetration. Given the effect on Morales's substantial rights, we find that reversal of his conviction for First Degree Criminal Sexual Conduct (as a 1st Degree Felony) is necessary to prevent a miscarriage of justice and to maintain the integrity of the judicial process. *See Gargarita*, 2015 Guam 28 ¶ 11.

### 2. Testimony of V.T.'s father

[47]    Morales argues that testimony by V.T.'s father as to certain statements of V.T. is inadmissible hearsay. Because Morales did not object to V.T.'s father's testimony regarding V.T.'s statements, we review for plain error and determine first if the trial court erroneously admitted the testimony.

[48]    V.T.'s father testified that V.T. told him that Morales had touched her. On cross-examination, V.T.'s father further stated that V.T. informed him that "Don had touched her in – on her chest and near her butt." Tr. at 86-87 (Jury Trial, Nov. 14 2018). V.T.'s father explained these conversations happened on the day V.T. returned home from her great-grandmother's house, after V.T.'s mother had talked to V.T.

[49]    Given the time lapse between these statements and the initial events, and that V.T. had reported the events to her mother earlier, such statements do not fall under the excited utterance exception to hearsay. And, because V.T.'s father's testimony relaying V.T.'s statements do not fall under any recognizable hearsay exception, and the People do not argue that any hearsay exception applies, we find the admission of the statement to be error that is clear and obvious under current law.

[50]    Under the third prong of plain error review, an error must affect a defendant's substantial rights. *De Soto*, 2016 Guam 12 ¶ 29. In his appeal, Morales does not demonstrate how V.T.'s father's specific hearsay testimony prejudiced Morales or affected the outcome of the proceedings.

Rather, V.T.'s father's testimony was cumulative and not prejudicial as it included information properly admitted in others' testimony. Accordingly, Morales has not met his burden in demonstrating how this specific hearsay error affected his substantial rights and has failed to establish plain error.

### 3. Testimonies of Officer Aguon and Officer Terlaje

[51]   On direct examination, Officer Aguon answered questions about the substance of an interview he conducted with V.T's maternal great-grandmother. During this testimony, the People asked Officer Aguon to confirm whether V.T.'s great-grandmother had informed him that Morales and V.T. had been alone in a room together on the morning in question. Officer Aguon responded, "Yes, ma'am." Tr. at 105 (Jury Trial, Nov. 8, 2018). Morales alleges the statement "corroborated [V.T.'s] statements regarding the place of the incident" and was inadmissible hearsay. Appellant's Br. at 32. Morales also alleges multiple hearsay statements attributed to V.T. made by Officer Terlaje. *Id.* During his testimony, Officer Terlaje confirmed that V.T. told him during an interview that Morales touched her stomach. Officer Terlaje also testified that, in a second interview, V.T. informed him that Morales touched her breast, vagina, and stomach, and that Morales used his "pinkie" and placed it in her vagina. Tr. at 73-74 (Jury Trial, Nov. 13, 2018).

[52]   Morales did not object to the statements made by Officer Aguon or Officer Terlaje, and so we review for plain error and determine whether the officers' testimonies were admitted erroneously. This court has stated that:

> A police officer . . . may reconstruct the steps taken in a criminal investigation, may testify about his contact with [a witness], and may describe the events leading up to a defendant's arrest, but the officer's testimony must be limited to the fact that he spoke to [a witness] without disclosing the substance of that conversation. *There is a clear distinction between an [officer] testifying about the fact that he spoke to [a witness] without disclosing the contents of the conversation and the agent testifying about the specific contents of the conversation which is inadmissible hearsay.*

*People v. Tedtaotao*, 2016 Guam 9 ¶ 20 (alterations in original) (quoting *People v. Roten*, 2012 Guam 3 ¶ 19).

**[53]**     Here, both Officer Aguon and Officer Terlaje testified about the specific contents of out-of-court statements attributed to V.T.'s great-grandmother and V.T. during prior interviews held at the onset of the police investigation. Thus, they appear to be inadmissible hearsay, unless some hearsay exception applies, or the statements were not offered to prove the truth of the matter asserted. The People, however, do not argue that any hearsay exception applies or that either of the officers' hearsay statements was offered for some other purpose during trial. Rather, the nature of the disputed testimony appears intended to demonstrate the truth of the matters asserted.

**[54]**     Because the testimonies of Officer Aguon and Officer Terlaje do not fall under any recognizable hearsay exception, and the People do not argue that any hearsay exception applies or that the statements were offered for some other purpose, we find the admission of the officers' statements to be error that is clear and obvious under current law.

**[55]**     Although the testimonies of Officer Aguon and Officer Terlaje were admitted in error, Morales has failed to meet his burden on the third prong of plain error review because: (1) Morales does not demonstrate how the specific hearsay statements prejudiced him or affected the outcome of the proceedings; (2) the evidence was largely cumulative of other properly admitted evidence; and (3) any harm to Morales's substantial rights, such as prejudicial effects as to Morales's First Degree Criminal Sexual Conduct conviction arising from the hearsay statements, are cured by our reversal of this conviction on other grounds.

### 4.   Cell phone recording of V.T.

**[56]**     During V.T.'s mother's testimony, the prosecution played a recording of V.T. describing the events that had occurred with Morales. Morales argues the recording is inadmissible hearsay

and was not authenticated under Guam Rule of Evidence 901. Appellant's Br. at 30-31. Because Morales failed to object to the admission of the recording during trial, we review for plain error.

[57] Rule 901, in pertinent part, states: "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Guam R. Evid. 901. Our review of the record demonstrates the People laid a sufficient foundation for the recording, before its admission, by asking V.T.'s mother various questions about the recording. Defense counsel also listened to the recording before its admission and stated: "Your Honor, I've had an opportunity to review the recording. That's the recording that's been provided to me. There's been no alterations. No objections." Tr. at 51 (Jury Trial, Nov. 8, 2018). Based on these circumstances, the authentication and identification process under Rule 901 was satisfied.

[58] While the recording was properly authenticated, its admission presents another potential error because of the hearsay statements contained therein. Inadmissible evidence can be introduced at trial if opposing counsel opens the door for the evidence by creating a misleading impression about its contents or significance. *See, e.g.*, *Perez v. Civil Serv. Comm'n (Guam Dep't of Educ.)*, 2018 Guam 25 ¶ 29; *Finik*, 2017 Guam 21 ¶ 43; *People v. Ongiil*, 2016 Guam 34 ¶ 37. This is because "[w]hen a criminal defendant creates a false or misleading impression on an issue, [courts] have held the government may 'clarify, rebut, or complete [the] issue' with what would 'otherwise [be] inadmissible evidence, including hearsay statements.'" *United States v. Spotted Bear*, 920 F.3d 1199, 1201 (8th Cir. 2019) (third and fourth alterations in original) (quoting *United States v. Eagle*, 515 F.3d 794, 801 (8th Cir. 2008)).

[59] The admission of such evidence, however, is not without its limitations. *See, e.g.*, *State v. Heath*, 211 A.3d 458, 463 (Md. 2019) ("[I]n admitting evidence under the 'open door' doctrine,

'the remedy must be proportionate to the malady' . . . ."); *United States v. Winston*, 447 F.2d 1236, 1240 (D.C. Cir. 1971) ("Opening the door is one thing. But what comes through the door is another. Everything cannot come through the door."). A party may admit evidence to counter the inferences made, but it may not expand beyond that to allow a party to "improve his chances of winning by increasing the possibility of erroneous factual adjudication with respect to some other matter." *State v. Adonri*, 923 P.2d 658, 661 (Or. Ct. App. 1996) (in banc) (quoting Wigmore, *Evidence* § 15, at 749-50 (Tillers rev. 1983)). The admitted evidence must put the misleading evidence or testimony into context and may generally not "stray beyond the scope of the invitation." *Wells v. State*, 319 S.W.3d 82, 94 (Tex. App. 2010); *see also State v. Rogan*, 864 A.2d 382, 383-84 (N.H. 2005) (holding audio recording admissible under open door doctrine because opposing counsel created misleading impression of recording's contents).

[60]   In our review of the record, defense counsel initially raised the recording of V.T. during its cross-examination of V.T.'s mother. Defense counsel asked V.T.'s mother where the recording was, what she did with it, and how the police responded when she offered them the recording. Defense counsel then made statements suggesting the recording was unimportant because the police were not interested in hearing its contents. During the redirect examination of V.T.'s mother, the recording was entered into evidence without objection and played for the jury. In the recording, V.T. repeated the details of the incident with Morales and stated that Morales "put[] his hand inside," Tr. at 4 (Extract of Proceedings: Ex. 11, Cell Phone Recording, Nov. 8, 2018), but it is unclear what "inside" means. Afterward, defense counsel asked V.T.'s mother additional questions on the contents of the recording. Tr. at 57-60 (Jury Trial, Nov. 8, 2018).

[61]   Since defense counsel raised questions about the recording, created a misleading impression of the recording's contents, and did not object to the recording's admission, defense

counsel opened the door for admitting the recording into evidence. Accordingly, the court did not err in admitting the recording. We are mindful, however, that while defense counsel opened the door to admission of the recording, the People should be allowed to introduce the evidence only within a limited scope. That is, to correct any misleading impression created by defense counsel's inquiry. The People could not go beyond curing this misimpression by allowing for the hearsay statements contained therein to be admitted for the truth of the matter asserted.[4] However, even if the hearsay statements by V.T. contained in the recording were admitted in error and considered for some other purpose, any error did not affect Morales's substantial rights because: (1) Morales makes no effort to demonstrate how the specific hearsay statements prejudiced him or affected the outcome of the proceedings; (2) the evidence was largely cumulative of other properly admitted evidence; and (3) any harm to Morales's substantial rights, such as prejudicial effects as to Morales's First Degree Criminal Sexual Conduct conviction arising from V.T.'s hearsay statements, are cured by our reversal of this conviction on other grounds.

### 5. Testimony of Dr. Fojas

[62] Morales claims that Dr. Fojas testified as to various hearsay statements made by V.T. *See* Appellant's Br. at 33. Morales specifically alleges as hearsay a portion of Dr. Fojas's testimony where Dr. Fojas testified that V.T. verbalized to her she was "touched on her breasts and private

---

[4] In *State v. Rogan*, the Supreme Court of New Hampshire held that the playing of an audio recording for the jury of an interview with a victim was not prejudicial, as it allowed the jury to assess for themselves "whether the information on the tape rebutted the misimpression created by defense counsel." 864 A.2d 382, 385 (N.H. 2005). Notably, the *Rogan* court heavily weighed the trial court's limiting instruction about the recording, which stated in part:

> The tape, which has been admitted into evidence, is not admitted as proof of the truth of the statements contained in the tape but as evidence bearing upon the credibility of certain statements . . . . In other words, this tape has been admitted into evidence for a limited purpose. You are not to consider the content of this tape as proof of the truth of the statements contained therein, but only as evidence bearing upon the issues of [the witness's] credibility in her testimony at trial . . . .

*Id.* at 386. We recognize it is best practice for a trial court to give a similar limiting instruction in relevant circumstances.

part" by "Papa Don." Tr. at 39-40 (Jury Trial, Nov. 7, 2018). Because Morales did not object to the admission of the alleged hearsay statement, we review for plain error.

[63]    Under Rule 803(4), statements made for purposes of medical diagnosis or treatment are generally not excluded by the hearsay rule. Specifically, the rule lists as a hearsay exception: "Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." Guam R. Evid. 803(4); *see also Roby*, 2017 Guam 7 ¶ 27.

[64]    Our review of the record shows that the alleged hearsay statements of Dr. Fojas were admissible under Rule 803(4). Dr. Fojas testified as an expert in pediatrics and was V.T.'s pediatrician. Dr. Fojas stated that she performed a medical examination of V.T. because of a concern about V.T.'s change in behavior around males in her family. During this examination, Dr. Fojas testified that V.T. verbalized she was "touched on her breasts and private part" by "Papa Don." Tr. at 39-40 (Jury Trial, Nov. 7, 2018).

[65]    Given the context, content, and scope of the statements, V.T.'s statements to Dr. Fojas regarding how she had been sexually assaulted were admissible under Rule 803(4) since those statements were reasonably pertinent to diagnosis or treatment. Thus, Morales has failed to establish plain error.

### 6. Testimony of Dr. Perez

[66]    Morales claims that Dr. Perez also testified as to various hearsay statements made by V.T. *See* Appellant's Br. at 34. Specifically, Morales alleges as hearsay a portion of Dr. Perez's testimony[5] where Dr. Perez testified that V.T. described to her the incident and said that Morales

---

[5] Morales does not specifically allege or raise as hearsay other portions of Dr. Perez's testimony where she testified as to statements made by V.T. Thus, we decline to consider those statements on appeal.

had touched her "private parts." Tr. at 32-33 (Jury Trial, Nov. 14, 2018). Morales objected to this portion of Dr. Perez's testimony; therefore, we review the trial court's decision to admit the testimony for an abuse of discretion. *See Chinel*, 2013 Guam 24 ¶ 18.

[67]     As we have addressed, statements made for purposes of medical diagnosis or treatment are generally not excluded by the hearsay rule under Rule 803(4). *See* Guam R. Evid. 803(4). In *People v. Camacho*, we expressed that the hearsay exception under Rule 803(4) applies to psychological injury and statements of a declarant need not have been made to a physician. 2016 Guam 37 ¶ 25.

[68]     Here, Dr. Perez was certified as an expert in play therapy and social work and testified that she was a licensed professional and mental health counselor, marriage and family therapist, play therapist, and clinical social worker. Dr. Perez testified that V.T. was her client and had been referred to her by Dr. Fojas. Dr. Perez further stated that she treated V.T. over the course of 15 to 20 sessions. Dr. Perez testified that during one of those sessions, V.T. described to her how Morales had touched V.T.'s "private parts." Tr. at 32-33 (Jury Trial, Nov. 14, 2018).

[69]     Based on our review of the record, V.T.'s statements to Dr. Perez reflect statements made for the purpose of receiving medical diagnosis or treatment and were thus proper under Rule 803(4). Further, Dr. Perez relied on the statements of V.T. for treatment and to aid V.T.'s emotional healing of her trauma. Because the statements were not excluded by the hearsay rule, their admission did not constitute an abuse of discretion.

## E. The Evidence Is Sufficient to Convict Morales of Three Counts of Second Degree Criminal Sexual Conduct

[70]     Morales claims there is insufficient evidence to support his convictions. Appellant's Br. at 23-27. We review this issue *de novo*. *See Song*, 2021 Guam 14 ¶ 16 (quoting *Aguon*, 2020 Guam 24 ¶ 11). In determining whether this is sufficient evidence to sustain Morales's

convictions, "we review the evidence in the light most favorable to the People and determine whether any rational trier of fact could have found the essential elements of the crime[s] beyond a reasonable doubt." *Id.* ¶ 18 (alteration in original) (quoting *People v. Wia*, 2020 Guam 17 ¶ 35). "This is a 'highly deferential standard of review.'" *Id.* (quoting *Wia*, 2020 Guam 17 ¶ 35). "[T]he People 'must be afforded the strongest legitimate view of the evidence and all reasonable inferences that may be drawn therefrom.'" *Id.* (alteration in original) (quoting *Wia*, 2020 Guam 17 ¶ 35).

[71]     "It is not the province of the court, in determining [a motion for a judgment of acquittal], to resolve conflicts in the evidence, to pass upon the credibility of witnesses, to determine the plausibility of explanations, or to weigh the evidence; such matters are for the jury." *Id.* ¶ 19 (alterations in original) (quoting *Wia*, 2020 Guam 17 ¶ 36). "The court is concerned with the existence or nonexistence of evidence, not its weight, and this standard remains constant even when the People rely exclusively on circumstantial evidence." *Id.* (quoting *Wia*, 2020 Guam 17 ¶ 36). "[I]f there is any direct evidence or any substantial circumstantial evidence reasonably tending to prove the guilt of the accused, we must find the case was properly submitted to the jury." *Id.* (alteration in original) (quoting *People v. Song*, 2012 Guam 21 ¶ 29).

[72]     Because we reverse the First Degree Criminal Sexual Conduct conviction on other grounds, i.e., the erroneous admission of hearsay evidence, *see supra* Part IV.D.1, we need not discuss the sufficiency of the evidence claim for this conviction.

[73]     Morales argues there was insufficient evidence to convict him on the three counts of Second Degree Criminal Sexual Conduct because of the People's failure to establish that any sexual contact was for the purpose of sexual arousal or gratification. Appellant's Br. at 25. In

response, the People argue that the sexual arousal or gratification could be inferred from the circumstances. Appellee's Br. at 31. We agree with the People.

[74]    Morales was found guilty of three counts of Second Degree Criminal Sexual Conduct in violation of 9 GCA § 25.20(a)(1) and (b). Specifically, 9 GCA § 25.20(a)(1) states that "[a] person is guilty of criminal sexual conduct in the second degree if the person engages in *sexual contact* with another person" and "that other person is under fourteen (14) years of age." 9 GCA § 25.20(a)(1) (as amended by Guam Pub. L. 32-012:2 (Apr. 11, 2013)) (emphasis added). Sexual contact is separately defined:

> Sexual Contact includes the intentional touching of the victim's or actor's intimate parts or the intentional touching of the clothing covering the immediate area of the victim's or actor's intimate parts, if that intentional touching can reasonably be construed as being for the purpose of sexual arousal or gratification.

9 GCA § 25.10(a)(8) (2005).

[75]    In *People v. Enriquez*, we stated: "In determining whether actions are done for sexual arousal or gratification, the trier of fact may infer motivation based on the defendant's actions." 2014 Guam 11 ¶ 28 (citing *State v. Cobb*, 610 N.E.2d 1009, 1013 (Ohio Ct. App. 1991). "If the trier of fact finds that the 'defendant was motivated by desires of sexual arousal or gratification, and that the contact occurred, then the trier of fact may conclude that the object of the defendant's motivation was achieved.'" *Id.* (quoting *Cobb*, 610 N.E.2d at 1013). This is because the element of sexual contact is met if the intentional touching "can *reasonably be construed* as being for the purpose of sexual arousal or gratification," even if the actor did not act with the specific purpose of sexual arousal or gratification. 9 GCA § 25.10(a)(8) (emphasis added); *see also People v. Warner*, 139 P.3d 475, 478-79 (Cal. 2006); *People v. Fisher*, 257 N.W.2d 250, 254 (Mich. Ct. App. 1977).

**[76]**    Based on the testimony of V.T. and Dr. Fojas, there is sufficient evidence to convict Morales for the three counts of Second Degree Criminal Sexual Conduct.  The testimony of V.T. alone was sufficient to prove the first two counts of Second Degree Criminal Sexual Conduct.  *See* 9 GCA § 25.40 (for prosecutions under 9 GCA §§ 25.15 through 25.35, "the testimony of a victim need not be corroborated").  V.T. testified, in great detail, that Morales touched her private parts—specifically, her vagina and buttocks—while lying on a bed in a room at her great-grandmother's home.  From V.T's entire testimony, the jury could reasonably construe the intentional touching of her vagina and buttocks by Morales to be for the purpose of sexual arousal or gratification even if the People presented no specific evidence of Morales's sexual arousal or gratification.  Dr. Fojas's testimony of V.T.'s statements from treatment demonstrate that V.T. was also touched on her breast area, which is sufficient for the third count of Second Degree Criminal Sexual Conduct. Based on V.T.'s and Dr. Fojas's testimony, and other testimony by V.T.'s mother and Dr. Perez, we find there is sufficient evidence for each of Morales's convictions for Second Degree Criminal Sexual Conduct.

## V.  CONCLUSION

**[77]**    We **AFFIRM** Morales's convictions for the three counts of Second Degree Criminal Sexual Conduct, **REVERSE** his conviction for First Degree Criminal Sexual Conduct, and **REMAND** for further proceedings not inconsistent with this opinion.


/s/
ROBERT J. TORRES
Associate Justice

/s/
KATHERINE A. MARAMAN
Associate Justice


/s/
F. PHILIP CARBULLIDO
Chief Justice