
**Filed**
Supreme Court of Guam, Clerk of Court

# IN THE SUPREME COURT OF GUAM

## PEOPLE OF GUAM,
Plaintiff-Appellee,

**v.**

## DERICK JAMES SIMMONS,
Defendant-Appellant.

Supreme Court Case No. CRA24-010
Superior Court Case No. CF0242-20

## OPINION

## Cite as: 2025 Guam 13

Appeal from the Superior Court of Guam
Argued and submitted on February 27, 2025
Hagåtña, Guam

Appearing for Defendant-Appellant:
Brian P. Eggleston, *Esq.* (briefed)
Christian F. Spotanski, *Esq.* (argued)
Assistant Public Defenders
Public Defender Service Corporation
779 Rte. 4
Sinajana, GU 96910

Appearing for Plaintiff-Appellee:
Christine Santos Tenorio, *Esq.*
Assistant Attorney General
Office of the Attorney General
General Crimes Division
134 W. Soledad Ave., Ste. 301
Hagåtña, GU 96910

**E-Received**
12/29/2025 11:48:06 AM

BEFORE: ROBERT J. TORRES, Chief Justice; F. PHILIP CARBULLIDO, Associate Justice; and KATHERINE A. MARAMAN, Associate Justice.

**CARBULLIDO, J.:**

[1]     Defendant-Appellant Derick James Simmons was found guilty of five counts of Second Degree Criminal Sexual Conduct ("CSC II") for four alleged instances of Simmons touching the vagina of R.D., a minor under fourteen, and one alleged instance of Simmons touching the vagina of R.C., a minor under fourteen, each in violation of 9 GCA § 25.20(a)(1) and (b).  Simmons's counsel objected to a jury instruction stating that victim testimony need not be corroborated in CSC prosecutions, but the trial court denied his motion to exclude it.  The court also overruled defense counsel's hearsay objection to a statement made to police.  Before sentencing, Simmons learned that a juror had a prior relationship with the victims' grandmother, a prosecution witness. He moved for a new trial, alleging a violation of his Sixth Amendment right to an impartial jury, but the court denied the motion, finding no actual or implied bias.

[2]     On appeal, Simmons argues the trial court erred by (1) instructing the jury that a victim's testimony need not be corroborated in CSC cases, (2) applying the wrong standard in denying his motion for a new trial, and (3) admitting hearsay testimony.  We affirm.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

### A.  Trial Testimony

[3]     Officer Benjamin Cruz of the Guam Police Department ("GPD") testified about his investigation into a May 2020 CSC complaint made by T.D., the mother of R.D. and R.C.  Officer Cruz testified that T.D. told him that her daughter, R.D., alleged she had been "sexually assaulted" by her stepfather,[1] Simmons.  Transcript ("Tr.") at 26-29 (Jury Trial, Day 2, Mar. 10, 2022).

---

[1] Later testimony revealed that Simmons and T.D. had been engaged but never married.

Simmons's trial counsel objected to hearsay, but the court overruled, accepting it as non-hearsay context for Officer Cruz's actions. Officer Cruz testified that during his preliminary investigation at the crime scene, R.C. approached him and stated she had also been "assaulted" by Simmons. *Id.* at 30. Defense counsel did not object to this testimony.

[4] J.D.—T.D.'s mother and the maternal grandmother of R.D. and R.C.—confirmed that Simmons, T.D., and the girls lived with J.D. in her Dededo home beginning in July or August 2019. She stated that Simmons moved out in May 2020, while T.D. and the girls continued living there until July or August 2020. J.D. stated there were twelve or thirteen people living in her house. She also testified that Simmons, T.D., R.D., R.C., and T.D.'s two youngest children all slept in the living room, collectively sharing two futons. She explained that two of her other daughters, her daughter's boyfriend, and one of her other grandchildren also slept in the living room. She further testified that she has legal guardianship over R.D. (but not R.C.).

[5] T.D. testified that she had dated Simmons from January 2015 to December 2020. T.D. described speaking with the police at her mother's home in May 2020 because R.D. alleged that Simmons had touched her. T.D. explained that while she was speaking with the police, R.C. told her auntie that Simmons had assaulted her as well.

[6] T.D. testified that she told the police that she had seen two videos on Simmons's phone of R.D. and R.C. getting into the shower naked. The videos were not introduced into evidence. T.D. also testified that she had expressed concerns to Simmons and the police about the way Simmons would position his hand when sleeping next to R.D.

[7] T.D. also testified that two of her sisters, her sister's boyfriend, her nephew, and sometimes her brother, all slept in the living room with her, Simmons, R.D., R.C., and her two youngest children. She said that she would wake up every hour or two to breastfeed her youngest daughter.

T.D. also testified that the children often moved in their sleep, and as a light sleeper, she would have noticed if Simmons was moving around or was moving both of his arms.

[8]      R.C., who was ten years old and in the fifth grade at the time of trial, testified that Simmons touched her "private part . . . [i]n [her] front, but on the bottom," where she uses the bathroom, multiple times.  Tr. at 122-23, 127-28 (Jury Trial, Day 2).  She said the touching occurred when she was about eight years old, while she was sleeping on a futon in the living room with Simmons, her mother, and her two little sisters.  She testified that she would "[p]ush his hand away" when he touched her.  *Id.* at 157-58.

[9]      R.D., who was thirteen years old and in the eighth grade at the time of trial, testified that Simmons would touch her breasts and her vagina.  She stated that Simmons touched her every other day from April 7 to May 20, 2020, when she disclosed the abuse.  After her recollection was refreshed with her written statement to police, R.D. further testified that the touching had first begun around October 2019, before stopping for a period.

## B.  Jury Instructions and Closing Arguments

[10]     The jury instructions included Instruction 4E (the "non-corroboration" instruction), which reads: "The testimony of a victim need not be corroborated in prosecutions of Criminal Sexual Conduct."  Record on Appeal ("RA"), tab 49 at Instr. 4E (Jury Instrs., Mar. 14, 2022); *accord* Tr. at 58 (Jury Trial, Day 4, Mar. 14, 2022).  During the jury instruction conference, defense counsel objected to Jury Instruction 4E (the "non-corroboration" instruction) as unnecessary and confusing, but the trial court denied his motion to exclude it.

[11]     Defense counsel's closing argument challenged the credibility of R.D.'s and R.C.'s allegations by highlighting inconsistencies within and across various witnesses' testimony.  He also emphasized the number of people sleeping in the living room with Simmons and the girls

during the alleged abuse, questioning how Simmons could have touched them unnoticed, especially given R.D.'s claim that he did so every other day for over a month.

[12]     The jury found Simmons guilty on all five counts of CSC II.[2]

## C.  Simmons Moved for New Trial

[13]     After the guilty verdict, Simmons learned that Juror 12 had a preexisting relationship with J.D.—the alleged victims' grandmother, R.D.'s legal guardian, and a prosecution witness. Simmons moved for a new trial based on newly discovered evidence, claiming that Juror 12 had deliberately concealed information during voir dire, violating his Sixth Amendment right to an impartial jury.  Simmons argued that Juror 12 failed to disclose her relationship with J.D. when asked if she knew any of the trial's witnesses.  He argued:

> [T]he instant motion involves juror dishonesty on *voir dire* that violates Defendant's Sixth Amendment right to an impartial jury, thus demanding a modified analysis based on the standard the U.S. Supreme Court announced in *McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. 548 (1984), to determine when this type of juror misconduct should result in a new trial.

RA, tab 66 at 10 (Mot. New Trial, June 13, 2022).

[14]     Simmons supported his motion for a new trial with an affidavit from the Guam Public Defender Service Corporation ("PDSC") Chief Investigator Robbie Call to assert that: (1) the defense investigator received information that Juror 12 failed to disclose her relationship with J.D. on voir dire; (2) the investigator met with Juror 12, who admitted knowing J.D. because they were previously coworkers at Coast360 Federal Credit Union ("Coast360"); (3) Juror 12 justified withholding the information by claiming it did not affect her impartiality; (4) at no point during the trial did she inform the court, marshals, or attorneys about her relationship with J.D.; and (5)

---

[2] Simmons was initially indicted for three counts of First Degree Criminal Sexual Conduct ("CSC I") and four counts of CSC II.  A Superseding Indictment charged Simmons with three counts of CSC I and five counts of CSC II.  After the government's case-in-chief, the court granted People's motion to dismiss all three counts of CSC I due to a lack of evidence.  The case proceeded with an Amended Indictment, which included five counts of CSC II. Simmons was convicted on all counts presented to the jury.

the investigator presented Juror 12 with a 2015 Coast360 annual report photo featuring both Juror 12 and J.D. in the same department. Simmons argued that this collectively demonstrated Juror 12's deliberate omission of relevant information, motivated by her desire to serve as a juror. At a hearing on Simmons's motion, defense counsel argued the trial court had the discretion to order a new trial "even short of a finding that a constitutional right was actually infringed." Tr. a 4 (Mot. Hr'g, Mar. 30, 2023).

[15]    In opposition, the People submitted a declaration from Office of the Attorney General Criminal Investigator William Salisbury, who also interviewed Juror 12. Investigator Salisbury declared that Juror 12 told him that she did not disclose her prior relationship with J.D. during voir dire because she did not recognize J.D.'s full name. When speaking with Investigator Salisbury, Juror 12 recalled working with someone several years earlier who used a common, shortened form of J.D.'s first name but had not realized they were the same person.

### 1. Juror 12, J.D., and T.D. testified at an evidentiary hearing

[16]    The trial court held an evidentiary hearing—during which Juror 12, J.D., and T.D. testified—to determine whether Juror 12's voir dire omission was intentional.

[17]    At the evidentiary hearing, Juror 12 testified that she knew J.D. because they were two of five people working in the loan servicing department at Coast360, where she began working in 2007. Juror 12 testified that she did not recognize J.D.'s and T.D.'s names during voir dire but that she did recognize them in person when they took the witness stand. She also testified that she did not alert the court or the attorneys after recognizing them.

[18]    Juror 12 stated that, while they were coworkers, she had gone to one of J.D.'s family events, but she did not recall the year. She also recalled J.D. attending her grandson's first birthday party around 2015 or 2016, though she was unsure if she had invited J.D. or if J.D.'s husband was invited by other family members.

[19]     Juror 12 further explained that she had not maintained a friendship with J.D.'s family by the time of the trial, and last ran into J.D. about a year before, either at work or at Cost-U-Less. Juror 12 further testified that when she saw J.D. and T.D. on the stand and realized that she recognized them, she did not tell the court because "it didn't dawn on me that I should. For me, from my understanding, I did take an oath of being fair and impartial, so that's what I proceeded with." Tr. at 17-18 (Mot. Hr'g, Oct. 6, 2023). Juror 12 stated that she did not believe any previous relationship with J.D.'s family would affect her impartiality.

[20]     At the evidentiary hearing, J.D. testified that she knew Juror 12 from their time working together at Coast360, where J.D. had been employed for 25 years. She explained that she and Juror 12 worked in the same department from about 2013 to 2017. She also stated that they had gone to each other's family events, including the first birthday party of Juror 12's grandson in 2011 or 2012, and an event for J.D.'s daughter sometime between 2011 and 2013. However, J.D. maintained that she did not recall seeing Juror 12 during the trial.

[21]     At the evidentiary hearing, T.D. testified that she recognized Juror 12 as her mother's "long-time coworker" and "friend." *Id.* at 29. T.D. stated that Juror 12 and J.D. "worked alongside each other," with Juror 12 working directly under J.D. in the loan servicing department. *Id.* at 29-30. T.D. also mentioned that (1) she and her family attended the first birthday party of Juror 12's grandson around 2010, (2) Juror 12 may have attended her sister's graduation, and (3) Juror 12 also attended two or three of her younger brothers' birthday parties. When asked about her interactions with Juror 12, T.D. said that, while J.D. worked at Coast360, everyone knew T.D. and her siblings, and they interacted "a lot"—more times than she could count. *Id.* at 30-31. She further testified that her mother and Juror 12 "were pretty close." *Id.* at 36.

[22]     T.D. added that she and Simmons lived in J.D.'s house from 2015 to 2016 and continued to visit Coast360 for at least the following year or two. She also claimed that Simmons and Juror

12 had met more than three times while Simmons accompanied T.D. to Coast360 to drop off lunch for her mother. However, T.D. clarified that she did not believe Juror 12 would have recognized Simmons. When J.D. had testified earlier, she claimed not to remember T.D. ever coming to Coast360 to deliver lunch.

[23]     According to T.D., before she and J.D. testified at trial, J.D. told her she had spotted Juror 12 in the courthouse but was not sure if Juror 12 was on the jury for Simmons's case. T.D. also claimed that her mother instructed her not to mention that her brothers, sister, sister's boyfriend, and nephew slept in the same living room as Simmons, T.D., and the girls. Additionally, she alleged that her mother told her not to mention that another sister, her boyfriend, and their children were also living in J.D.'s house.

[24]     T.D. explained that she went to the PDSC office after the trial to tell them about the personal relationship between Juror 12 and her family.

### 2. The trial court denied Simmons's motion for a new trial

[25]     Following the evidentiary hearing, the trial court issued a decision denying Simmons's motion for a new trial. The trial court stated that under the U.S. Supreme Court's *McDonough* test, even if a juror failed to honestly answer a material question on voir dire, a defendant "must still demonstrate that a truthful answer from the juror would have provided a valid basis to strike the juror for cause." RA, tab 93 at 4 (Dec. & Order, Jan. 5, 2024). The trial court concluded this requires a "showing of either actual or implied bias, i.e., bias in fact or bias conclusively presumed as a matter of law." *Id.* (citing *United States v. Gonzalez*, 214 F.3d 1109, 1112 (9th Cir. 2000)). The trial court found no implied or actual bias and determined that Simmons failed to satisfy the *McDonough* test.

[26]     The trial court entered judgment, sentencing Simmons to seven years of incarceration. Simmons timely appealed.

## II. JURISDICTION

[27]    This court has jurisdiction over appeals from final judgments and orders of the Superior Court of Guam.  48 U.S.C.A. § 1424-1(a)(2) (Westlaw through Pub. L. 119-59 (2025)); 7 GCA §§ 3107(a), 3108(a) (2005); 8 GCA §§ 130.10, 130.15(a)-(b) (2005).

## III. STANDARD OF REVIEW

[28]    "[W]here a defendant objected to a particular jury instruction at trial, courts view the instruction in the context of the delivered jury instructions as a whole and reverse only for an abuse of discretion."  *People v. Simiron*, 2021 Guam 16 ¶ 22 (alteration in original) (quoting *People v. Cruz*, 2020 Guam 11 ¶ 9); *People v. Morales*, 2022 Guam 1 ¶ 31 ("[W]e review jury instructions as a whole rather than in isolation." (quoting *People v. Cox*, 2018 Guam 16 ¶ 16)); *People v. Songeni*, 2010 Guam 20 ¶ 9.  This court considers "whether the proffered instructions accurately stated the relevant law under a *de novo* standard."  *People v. Gargarita*, 2015 Guam 28 ¶ 12 (citing *People v. Diego*, 2013 Guam 15 ¶ 9).

[29]    A trial court's decision on a motion for a new trial is also reviewed for an abuse of discretion.  *People v. Messier*, 2014 Guam 34 ¶ 11 (citing *People v. Quinata*, 1999 Guam 6 ¶ 16); *People v. Leslie*, 2011 Guam 23 ¶ 12.

[30]    The abuse of discretion standard is a "highly deferential" standard of review.  *People v. Camaddu*, 2015 Guam 2 ¶ 16; *see also People v. Diaz*, 2007 Guam 3 ¶ 59 n.10; *Leslie*, 2011 Guam 23 ¶ 22 ("We continue to recognize the importance of appellate deference when considering whether the trial court abused its discretion in denying a defendant's motion for a new trial.").  When reviewing a trial court's denial of a motion for a new trial under this standard, "this court will not simply 'substitute its judgment for that of the trial court.'"  *People v. Bosi*, 2022 Guam 15 ¶ 71 (quoting *People v. Quintanilla*, 2001 Guam 12 ¶ 9); *see also Quinata*, 1999 Guam 6 ¶ 17.

Instead, this court's inquiry focuses on "whether the trial court's decision was allowable." *See Bosi*, 2022 Guam 15 ¶ 66.

[31] On appeal, the appellant bears the burden of establishing an abuse of discretion. *Quinata*, 1999 Guam 6 ¶ 17 (citing *United States v. Steel*, 759 F.2d 706, 713 (9th Cir. 1985)). This generally requires a showing that (1) the trial court's decision was "based on an erroneous conclusion of law" or (2) "the record contains no evidence on which the judge could have rationally based the decision." *People v. Corpuz*, 2019 Guam 1 ¶ 12 (quoting *Town House Dep't Stores, Inc. v. Ahn*, 2003 Guam 6 ¶ 27). If the trial court has understood the governing law correctly and has based its decision on findings of fact which were supported by the evidence, we will affirm if the trial court's decision is within the range of possible permissible decisions. *See Bosi*, 2022 Guam 15 ¶ 66 ("[A] decision is lawful at any point within the outer limits of the range of choices appropriate to the issue at hand . . . ." (quoting *Eastway Constr. Corp. v. City of New York*, 821 F.2d 121, 123 (2d Cir. 1987))); *Camaddu*, 2015 Guam 2 ¶ 16 (quoting *People v. Santos*, 2003 Guam 1 ¶ 29 n.6)); *People v. John*, 2016 Guam 41 ¶ 13 ("An abuse of discretion occurs when the court makes a judgment that clearly goes against the logic and effect of the facts." (quoting *People v. Palisoc*, 2002 Guam 9 ¶ 7)). Under this "highly deferential" standard, *Camaddu*, 2015 Guam 2 ¶ 16, "[a]ll presumptions will be exercised in favor of the correctness of the [trial] court's order," *In re Est. of Ulloa*, 2020 Guam 1 ¶ 36 (quoting *Est. of Beard v. Beard*, 84 Cal. Rptr. 2d 276, 293 (Ct. App. 1999)).

[32] When a party objects during trial to an evidentiary ruling, this court also reviews the trial court's decision to admit evidence for an abuse of discretion. *Morales*, 2022 Guam 1 ¶ 12 (citing *People v. Chinel*, 2013 Guam 24 ¶ 18). When the trial court has abused its discretion, this court applies the harmless error test to determine whether reversal is required. *People v. Roten*, 2012 Guam 3 ¶ 41 (citing *People v. Jesus*, 2009 Guam 2 ¶¶ 53-55; *United States v. Williams*, 133 F.3d

1048, 1051 (7th Cir. 1998) (applying similar standards under Federal Rules of Evidence)). "A harmless error inquiry typically involves analysis of numerous factors, including: (1) the overall strength of the prosecution's case; (2) the prosecutor's conduct with respect to the improperly admitted evidence; (3) the importance of the wrongly admitted evidence; and (4) whether such evidence was cumulative of other properly admitted evidence." *Roten*, 2012 Guam 3 ¶ 41 (citing *United States v. Garcia*, 413 F.3d 201, 217 (2d Cir. 2005)).

[33]    If a party does not object to an evidentiary ruling at trial, this court instead reviews the issue for plain error. *See Morales*, 2022 Guam 1 ¶ 12 (citing *People v. Roby*, 2017 Guam 7 ¶ 18). Under plain error review, "this court 'will not reverse unless (1) there was an error; (2) the error is clear or obvious under current law; (3) the error affected substantial rights; and (4) reversal is necessary to prevent a miscarriage of justice or to maintain the integrity of the judicial process.'" *Gargarita*, 2015 Guam 28 ¶ 11 (quoting *People v. Felder*, 2012 Guam 8 ¶ 19); *see also People v. Martin*, 2018 Guam 7 ¶ 9 (quoting *People v. Quitugua*, 2009 Guam 10 ¶ 11).

[34]    An error warrants reversal only if it affects the defendant's substantial rights. *See* 8 GCA § 130.50(a) (2005) ("Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded."); *Quitugua*, 2009 Guam 10 ¶ 11 (holding that plain error must affect substantial rights to warrant reversal); *Jesus*, 2009 Guam 2 ¶ 53 (holding that preserved error must affect substantial rights to warrant reversal).

[35]    Under harmless error review, the prosecution always bears the burden of persuasion regarding prejudice. *See People v. Meseral*, 2014 Guam 13 ¶ 42; *Quitugua*, 2009 Guam 10 ¶ 31 (explaining distinctions between burdens under plain error and harmless error review). When the error does not implicate a constitutional right, the prosecution must demonstrate that it is more probable than not that the error did not materially affect the verdict. *Jesus*, 2009 Guam 2 ¶ 54 ("A

non-constitutional error[3] requires reversal unless [the prosecution demonstrates that] it is more probable than not that the error did not materially affect the verdict." (citing *People v. Moses*, 2007 Guam 5 ¶ 18)).

[36]     Under plain error review, the defendant bears the burden of proving his substantial rights were affected. *People v. Jones*, 2006 Guam 13 ¶ 27 (citing *United States v. Olano*, 507 U.S. 725, 734 (1993)).

## IV. ANALYSIS

### A. The Trial Court Did Not Abuse Its Discretion in Giving the "Non-Corroboration" Jury Instruction

[37]     Simmons's first argument on appeal is that the trial court erred in allowing Jury Instruction 4E, which informed the jury that "[t]he testimony of a victim need not be corroborated in prosecutions of Criminal Sexual Conduct." Appellant's Br. at 19 (Aug. 20, 2024); RA, tab 49 at Instr. 4E (Jury Instrs.); Tr. at 58 (Jury Trial, Day 4).

[38]     Defense counsel objected to Jury Instruction 4E as unnecessary and confusing. Tr. at 3-5 (Jury Trial, Day 4). Counsel argued that the instruction was "[un]necessary to provide the jury with a complete and accurate statement of law" and had the potential to mislead the jury by highlighting the victims' testimony over others. *Id.* at 3. He also contended that the instruction could confuse the jury about whether they could "consider the absence of corroborating evidence." *Id.* at 4.

[39]     Because counsel objected to the instruction, we review for abuse of discretion. *Simiron*, 2021 Guam 16 ¶ 22. A trial court abuses its discretion if (1) its "decision [was] 'based on an

---

[3] This differs from the harmless error standard applied to constitutional errors, where the prosecution must show *beyond a reasonable doubt* that the error did not contribute to the verdict. *See People v. Torres*, 2014 Guam 8 ¶ 34; *People v. Asprer*, 2019 Guam 19 ¶ 21 n.1; *see also People v. Diego*, 2016 Guam 5 ¶ 11 ("When reviewing a constitutional violation, . . . the standard of review is harmless error, with a higher burden of proof than for non-constitutional errors.").

erroneous conclusion of law'" or (2) "the record contains no evidence on which the judge could have rationally based [the] decision." *In re Est. of Ulloa*, 2020 Guam 1 ¶ 36. However, we review *de novo* whether the challenged instruction accurately reflects the law. *Gargarita*, 2015 Guam 28 ¶ 12.

[40] When denying defense counsel's motion to exclude Jury Instruction 4E, the trial court noted that "[t]he jury instruction itself is a statutory provision . . . [a]nd the Court feels compelled to include it . . . ."[4] Tr. at 6 (Jury Trial, Day 4). The court reasoned that any potential confusion about the absence of corroborating evidence could be "mitigated" by defense counsel during closing arguments. *Id.* (noting that "counsel is not prohibited from arguing the absence of corroborative evidence").

[41] On appeal, Simmons argues that the instruction was reversible error because it was "unnecessary" and likely to confuse the jury regarding how to consider the victims' testimony relative to other testimony. Appellant's Br. at 19-20. The People counter that the instruction "was an accurate statement of law" and was "not misleading . . . considering the history of the statute and jury instructions as a whole." Appellee's Br. at 11 (Sep. 18, 2024). The People note that "just because a jury instruction is not necessary does not mean that it is erroneous." *Id.* They also argue that "the 'no corroboration' jury instruction did not place undue emphasis on the victims' testimony." *Id.* at 13.

---

[4] Simmons argues that the trial court "indicat[ed] it did not believe it had the discretion to omit the instruction" and contends that the inclusion of the instruction was not a discretionary decision but a result of the trial court's belief that the law required it. Appellant's Br. at 20 (Aug. 20, 2024). He asserts that this is a legal question to be reviewed *de novo*. *Id.* ("Questions of law are reviewed de novo." (quoting *People v. Sablan*, 2023 Guam 4 ¶ 25)). A trial court abuses its discretion if its "decision [was] 'based on an erroneous conclusion of law.'" *In re Est. of Ulloa*, 2020 Guam 1 ¶ 36. However, we ultimately review the decision to give a jury instruction for an abuse of discretion. *See Koon v. United States*, 518 U.S. 81, 100 (1996) ("A district court by definition abuses its discretion when it makes an error of law. That a . . . decision, in an occasional case, may call for a legal determination does not mean, as a consequence, that parts of the review must be labeled *de novo* while other parts are labeled an abuse of discretion." (citations omitted)). In any case, we would reach the same conclusion on *de novo* review. *See id.* ("Little turns, however, on whether we label review of this particular question abuse of discretion or *de novo*, for an abuse-of-discretion standard does not mean a mistake of law is beyond appellate correction.").

### 1. The "non-corroboration" instruction accurately reflected Guam law

[42]     The trial court correctly noted that the "non-corroboration" instruction aligned with Guam law. Under 9 GCA § 25.40, "[t]he testimony of a victim need not be corroborated in prosecutions under §§ 25.15 through 25.35 [(dealing with CSC offenses)]." 9 GCA § 25.40 (2005). Jury Instruction 4E accurately reflected this statutory language, supporting our conclusion that the trial court did not abuse its discretion in allowing the instruction. *See Gargarita*, 2015 Guam 28 ¶ 12; *People v. Aldan*, 2018 Guam 19 ¶ 14 ("Generally, a jury instruction that accurately tracks the language of the statute is sufficient to inform the jury of its duties.").

### 2. The trial court was bound by Appellate Division precedent approving "non-corroboration" instructions in CSC cases

[43]     In evaluating whether the "non-corroboration" instruction was proper, we begin by addressing the binding effect of prior Appellate Division and Ninth Circuit decisions approving "non-corroboration" instructions in CSC cases. Decisions by the former Appellate Division of the District Court of Guam, as well as Ninth Circuit decisions reviewing Appellate Division decisions, are binding precedent upon the trial courts of Guam until this court has ruled on those issues. *People v. Quenga*, 1997 Guam 6 ¶ 13 n.4; *People v. Palomo*, 1998 Guam 12 ¶ 6.

[44]     In *People v. Welch*, the Appellate Division addressed the permissibility of "non-corroboration" jury instructions in CSC cases. *See People v. Welch*, Crim. No. 90-00008A, 1990 WL 320365, at *1-2 (D. Guam App. Div. Oct. 30, 1990), *aff'd*, 958 F.2d 377 (9th Cir. 1992). The court noted that the instruction was accurately modeled after 9 GCA § 25.40. *Id.*, at *1. The court held that, when viewed in the context of the full jury instructions, the instruction did not "unduly" emphasize the victim's testimony. *Id.*, at *1-2. Because the trial court had instructed the jury on evaluating all witnesses' credibility—including the option to disbelieve any or all testimony—the court found no undue emphasis on the victim's testimony. *Id.* The Ninth Circuit affirmed,

adopting the Appellate Division's reasoning. *People v. Welch*, 958 F.2d 377 (9th Cir. 1992) (unpublished table decision).

[45]    The Ninth Circuit reaffirmed this approach in *Guam v. McGravey*, 14 F.3d 1344, 1347 n.2 (9th Cir. 1994). In *McGravey*, the Ninth Circuit reviewed *de novo* a similar "non-corroboration" jury instruction in a child CSC case on appeal from the Appellate Division. 14 F.3d at 1345-47. Like the court in *Welch*, the *McGravey* court began its analysis by confirming that the "non-corroboration" instruction was accurately "patterned" after 9 GCA § 25.40. *Id.* at 1345. The Ninth Circuit explained that the instruction did not give special weight to the victim's testimony when viewed in the context of the instructions as a whole. *Id.* at 1346-47. The court concluded that "no reasonable juror would believe that the testimony of the alleged victim was entitled to any special deference." *Id.* at 1347.

[46]    Because this court had not addressed the propriety of "non-corroboration" instructions in CSC cases, the trial court was bound by *Welch* and *McGravey*. This supports our conclusion that the trial court did not abuse its discretion in allowing Jury Instruction 4E. The trial court's decision was not based on an erroneous conclusion of law.

[47]    While decisions by the Appellate Division are binding on the trial court, they serve as persuasive rather than controlling authority over this court's legal analysis. *Quenga*, 1997 Guam 6 ¶ 13 n.4. However, this court has stated that it will not deviate from well-established and well-reasoned precedent of the Appellate Division unless justified by reason. *Limtiaco v. Guam Fire Dep't*, 2007 Guam 10 ¶ 46 n.9. Here, reason does not support deviating from the Appellate Division's and Ninth Circuit's approval of "non-corroboration" instructions in CSC cases.

[48]    The *Welch* and *McGravey* decisions were well-reasoned and well-established in law. Both (1) applied relevant Ninth Circuit and U.S. Supreme Court precedent to determine the standard of review, (2) assessed whether the "non-corroboration" instructions aligned with Guam law (i.e., 9

GCA § 25.40), (3) considered the jury instructions as a whole to evaluate whether they could have misled jurors, and (4) considered the persuasive value of Michigan case law. *Welch*, 1990 WL 320365, at *1-2; *McGravey*, 14 F.3d at 1345-47, 1347 n.2. Given their solid legal foundation and reasoning, this court will not depart from their approach.

### a. "Non-corroboration" instructions in other jurisdictions

[49]    Simmons argues that "the subsequent authority from other jurisdictions is more thoroughly reasoned and provides good reason to depart from the *Welch* decision." Appellant's Br. at 20 n.4. He maintains that "the current trend—as well as the better-reasoned trend—is toward prohibiting trial courts from giving this instruction." *Id.* at 21 (citing *State v. Kraai*, 969 N.W.2d 487 (Iowa 2022); *State v. Stukes*, 787 S.E.2d 480 (S.C. 2016); *Gutierrez v. State*, 177 So. 3d 226 (Fla. 2015); *Ludy v. State*, 784 N.E.2d 459 (Ind. 2003); *Burke v. State*, 624 P.2d 1240 (Alaska 1980)). However, a "slight majority" of courts continue to approve the propriety of "non-corroboration" instructions. *See* Tyler J. Buller, *Fighting Rape Culture with Noncorroboration Instructions*, 53 Tulsa L. Rev. 1, 15-16 (2017) (collecting cases). Thus, despite any emerging trend, the majority rule still supports allowing such instructions, which weighs against departing from *Welch* and *McGravey*.

[50]    Further persuasive authority regarding our CSC statutes comes from Michigan courts, which still allow "non-corroboration" instructions. Because Guam's CSC statutes were "patterned after Michigan's statutes," this court "look[s] to Michigan cases to aid us in interpreting our CSC statutes." *People v. Penaflorida*, 2022 Guam 14 ¶ 14 (citing *People v. Ehlert*, 2019 Guam 3 ¶ 20); *see also People v. Cummins*, 2010 Guam 19 ¶ 21. The Michigan Compiled Laws include a provision virtually identical to Guam's "non-corroboration" rule: "The testimony of a victim need not be corroborated in prosecutions under sections 520b to 520g [dealing with sexual offenses]." Mich. Comp. Laws. Ann. § 750.520h (West, Westlaw through P.A.2025, No. 38, of 2025 Reg.

Sess., 103d Leg.). In *People v. Smith*, 385 N.W.2d 654 (Mich. Ct. App. 1986), the Michigan Court of Appeals held that the trial court did not err in instructing the jury that they could convict the defendant based on the victim's uncorroborated testimony, as this accurately reflected the law. *People v. Smith*, 385 N.W.2d 654, 657 (Mich. Ct. App. 1986) (per curiam).[5] This persuasive authority reinforces our conclusion that the trial court did not abuse its discretion by instructing the jury with an accurate statement of the law under 9 GCA § 25.40 in Jury Instruction 4E.

### b. Title 9 GCA § 25.40 is not restricted to courts reviewing the sufficiency of evidence

[51]     Simmons concedes that the instruction is not an incorrect statement of the law. *See* Appellant's Br. at 22. He argues, however, that the instruction misapplies the legal standard, which he claims is directed at courts when reviewing the sufficiency of evidence, not juries deciding guilt beyond a reasonable doubt. *Id.* at 22-23.

[52]     Simmons relies on three cases, *Gutierrez v. State*, 177 So. 3d 226, 230-31 (Fla. 2015), *Ludy v. State*, 784 N.E.2d 459, 461 (Ind. 2003), and *State v. Stukes*, 787 S.E.2d 480, 482 (S.C. 2016), to assert that a "non-corroboration" statute should not be a jury instruction, but a standard for a court's review of the sufficiency of the evidence. *See* Appellant's Br. at 22-23. However, these cases are not on point.

[53]     *Gutierrez* was based on Florida precedent that concluded that the legislative history of Florida Statutes Annotated section 794.022(1) (i.e., Florida's "non-corroboration" statute) reveals that the statute was "directed at an appellate court's review of the sufficiency of the evidence in

---

[5] In *People v. Smith*, 385 N.W.2d 654, 657 (Mich. Ct. App. 1986), the court interpreted a predecessor to the current Michigan Model Criminal Jury Instruction 20.25. *People v. Cunningham*, No. 366138, 2025 WL 211267, at *4 (Mich. Ct. App. Jan. 15, 2025) (per curiam) (unpublished) (citing *Smith*, 385 N.W.2d 654). Michigan's Model Criminal Jury Instruction 20.25 now states: "To prove this charge, it is not necessary that there be evidence other than the testimony of [*name complainant*], if that testimony proves guilt beyond a reasonable doubt." *Testimony Need Not Be Corroborated*, Mich. M. Crim. JI 20.25 (West May 2025). We approve this instruction as an accurate statement of Guam law and conclude it may be appropriately given in future cases.

sexual battery cases." *See* 177 So. 3d at 230-31 (citing *Brown v. State*, 11 So. 3d 428, 439 (Fla. Dist. Ct. App. 2009)). The legislative history of section 794.022(1) includes an amendment that deleted a clause authorizing the trial court to instruct the jury regarding the weight and quality of the evidence that accompanied the original "non-corroboration" rule. *Brown*, 11 So. 3d at 435 (citing Ch. 83-258, § 1, at 1315, Laws of Fla.).[6] Simmons points to nothing in the legislative history of 9 GCA § 25.40 that similarly demonstrates legislative intent to limit the rule to guiding a court's review of the sufficiency of the evidence. Thus, *Gutierrez* is not persuasive.

[54] In *Ludy*, the Indiana Supreme Court found that the challenged "non-corroboration" instruction improperly introduced an appellate review "concept" into jury deliberations, which it deemed irrelevant to a jury's fact-finding role. 784 N.E.2d at 461. The court reasoned that a "jury is not reviewing whether a conviction is supported" and "[t]o expressly direct a jury that it may find guilt based on the uncorroborated testimony of a single person is to invite it to violate its obligation to consider all the evidence." *Id.* at 461-62. But Indiana lacks a statute like Guam's that specifically states a victim's testimony need not be corroborated in sexual offense cases. *See id.* at 461 (discussing case law—rather than statute—previously allowing a conviction to rest upon uncorroborated evidence of victim). Therefore, *Ludy* provides no insight into the propriety of an instruction based on a "non-corroboration" statute.

[55] In *Stukes*, the Supreme Court of South Carolina held that a "non-corroboration" instruction violated a state "constitutional provision prohibiting courts from commenting to the jury on the facts of a case." 787 S.E.2d at 483 (citing S.C. Const. art. V, § 21 ("Judges shall not charge juries

---

[6] In 1974, Florida enacted legislation providing that "[t]he testimony of the victim need not be corroborated in prosecutions under [the Sexual Battery statute]; however, *the court may instruct the jury with respect to the weight and quality of the evidence.*" *Brown v. State*, 11 So. 3d 428, 434 (Fla. Dist. Ct. App. 2009) (alterations in original) (emphasis added). However, "[t]hat latter phrase concerning instruction on the weight and quality of the evidence in a sexual battery prosecution was removed in 1984." *Gutierrez v. State*, 177 So. 3d 226, 229 (Fla. 2015) (citing Ch. 83-258, § 1, at 1315, Laws of Fla.).

in respect to matters of fact, but shall declare the law.")). Guam has no similar provision of law. Additionally, the trial court specifically instructed the jury not to interpret any statement or action by the judge as a comment on the evidence. Tr. at 50 (Jury Trial, Day 4); RA, tab 49 at Instr. 2B (Jury Instrs.). *Stukes* did not address a similar instruction. In *Stukes*, there was "inescapable" evidence that the "non-corroboration" instruction confused the jury because the jury submitted questions to the trial court, including one specifically asking whether the instruction "impl[ied] that the victim's testimony must be accepted as true." *Stukes*, 787 S.E.2d at 482-83. Given these distinctions in law and fact, *Stukes* is unpersuasive.

[56]    "[W]e look to Michigan cases to aid us in interpreting our CSC statutes." *Penaflorida*, 2022 Guam 14 ¶ 14. Simmons's argument closely resembles one that the Michigan Court of Appeals recently rejected. *See People v. Cunningham*, No. 366138, 2025 WL 211267, at *3 (Mich. Ct. App. Jan. 15, 2025) (per curiam) (unpublished) ("Defendant takes issue not with the statute itself but, rather, with informing the jury about it. . . . [D]efendant argues that, by . . . instructing the jury about it, the victim's testimony was improperly singled out as being 'special.'").[7] In *People v. Cunningham*, the Michigan Court of Appeals explained that their model non-corroboration instruction "is a result of [Mich. Comp. Laws Ann. §] 750.520h," which codifies Michigan's longstanding "anticorroboration rule." *Id.* (citing *People v. Norwood*, 245 N.W.2d 170, 172 (Mich. Ct. App. 1976); *People v. Inman*, 24 N.W.2d 176, 182-83 (Mich. 1946)). The court recognized that the purpose of the anticorroboration rule is "to permit a verdict to withstand a challenge to the sufficiency of the evidence in a case in which the only testimony against the defendant is that of the complainant." *Id.*, at *4 (quoting *Norwood*, 245 N.W.2d at 172). Despite

---

[7] "Although a majority of Michigan Court of Appeals decisions are unpublished, we rely on unpublished opinions to the extent their reasoned analysis is persuasive in the case before us." *People v. Hosei*, 2023 Guam 22 ¶ 31 n.2 (citation omitted).

the anticorroboration rule being a sufficiency standard, the Michigan court held that there was no error in giving a non-corroboration instruction because "the trial court gave an instruction that accurately encompassed [Mich. Comp. Laws Ann. §] 750.520h, and the instruction was particularly applicable since defense counsel during closing remarks explicitly highlighted the lack of corroborating evidence." *Id.* We find *Cunningham* highly persuasive and agree that it is appropriate to give a non-corroboration instruction when the defense highlights the lack of corroborating evidence. *See id.*

### 3. The "non-corroboration" instruction was not misleading when considered in the context of the jury instructions as a whole

[57]    Simmons argues that Jury Instruction 4E likely confused the jury regarding how to evaluate the victims' testimony relative to other testimony. Appellant's Br. at 19-20. When assessing whether a jury instruction was misleading or confusing, this court does not review the challenged instruction "in artificial isolation" but considers the jury instructions as a whole. *See Gargarita*, 2015 Guam 28 ¶¶ 12, 14 ("[I]nstructions that might be ambiguous in the abstract can be cured when read in conjunction with other instructions." (alteration in original) (quoting *Jones*, 2006 Guam 13 ¶ 28)).

[58]    Reviewing the jury instructions collectively, it does not appear that the "non-corroboration" instruction implied to the jury that they should give special consideration to the victims' testimony, or that they should disregard a lack of corroborating evidence. The trial court consistently emphasized that the jury should consider the instructions in their entirety. Tr. at 46, 49 (Jury Trial, Day 4); *accord* RA, tab 49 at Instrs. 1B, 1F (Jury Instrs.). The jury was also repeatedly informed that they were "the sole judges of witness credibility and the weight of their testimony." Tr. at 46, 58-59 (Jury Trial, Day 4); *accord* RA, tab 49 at Instrs. 1C, 4G (Jury Instrs.). The court repeated that the jurors were the "sole judges of the credibility of the witnesses and the

weight their testimony deserves" just two sentences after delivering the "non-corroboration" instruction. Tr. at 58 (Jury Trial, Day 4); *accord* RA, tab 49 at Instr. 4G (Jury Instrs.). The jury was also told that they "may disbelieve all or any part of any witness' testimony." Tr. at 57 (Jury Trial, Day 4); *accord* RA, tab 49 at Instr. 4B (Jury Instrs.).

[59] The trial court also extensively addressed factors the jury may consider when assessing witness credibility and the weight of their testimony. Tr. at 56-60 (Jury Trial, Day 4); *accord* RA, tab 49 at Instrs. 4B, 4C, 4G, 4H, 4I, 4J (Jury Instrs.). This included encouraging the jury to consider the "reasonable[ness] of the witnesses' testimony in light of all the evidence in the case" as well as whether the testimony was "contradicted or supported" by other witness testimony or evidence. Tr. at 57-58 (Jury Trial, Day 4); *accord* RA, tab 49 at Instr. 4B (Jury Instrs.). In the instruction right before the "non-corroboration" instruction, the trial court informed the jury: "The testimony of only one witness can prove any fact. Before you conclude that the testimony of one witness proves a fact, you should carefully review all of the evidence." Tr. at 58 (Jury Trial, Day 4); *accord* RA, tab 49 at Instr. 4D (Jury Instrs.). Thus, when considering the instructions as a whole, no reasonable juror would believe that the "non-corroboration" instruction granted the victims' testimony special status or implied that the credibility of the victims' testimony should go unanalyzed. *See McGravey*, 14 F.3d at 1347.

[60] Ultimately, the trial court did not abuse its discretion by giving the "non-corroboration" instruction, particularly when viewed in the context of the jury instructions as a whole. *See Gargarita*, 2015 Guam 28 ¶¶ 12, 14. The decision to deliver the instruction was not "based on an erroneous conclusion of law." *Cruz v. Cruz*, 2022 Guam 7 ¶ 18 (quoting *Town House*, 2003 Guam 6 ¶ 27). Moreover, although the "non-corroboration" instruction was not mandatory, its use fell within the range of permissible judicial discretion. *See Bosi*, 2022 Guam 15 ¶ 66.

**B. The Trial Court Did Not Abuse Its Discretion in Denying Simmons's Motion for a New Trial**

[61]     Simmons's second argument on appeal is that the trial court erred by applying the wrong legal standard in deciding his motion for a new trial. *See* Appellant's Br. at 25-27. A trial court's denial of a motion for a new trial is reviewed for abuse of discretion. *Messier*, 2014 Guam 34 ¶ 11. A court "abuses its discretion when its decision is based on an erroneous conclusion of law or where the record contains no evidence on which the judge could have rationally based the decision." *Cruz*, 2022 Guam 7 ¶ 18 (quoting *Town House*, 2003 Guam 6 ¶ 27). Simmons argues that "whether the trial court applied the correct standard in deciding the motion for a new trial is a legal question and is therefore subject to *de novo* review." Appellant's Br. at 25-26 (citing *People v. Sablan*, 2023 Guam 4 ¶ 25).

[62]     After his conviction, Simmons moved for a new trial based on "newly discovered evidence." RA, tab 66 at 1 (Mot. New Trial). He argued that, during voir dire, Juror 12 "did not disclose her relationship with [J.D.,] a key Government witness (and legal guardian of [R.D.])," which "thereby depriv[ed] [him] of his Sixth Amendment right to an impartial jury." *Id.* The trial court ordered an evidentiary hearing to resolve whether Juror 12's omission was "deliberate and knowing." RA, tab 88 at 1 (Order, July 25, 2023).

[63]     At the hearing, Juror 12, J.D., and T.D. testified. Their testimony revealed that Juror 12 and J.D. had been coworkers and went to family events together, though Juror 12 claimed their relationship had not been close by the time of the trial. She also stated that she did not recognize J.D.'s and T.D.'s names during voir dire but recognized them during the trial and did not alert the court or attorneys because she did not think her prior relationship affected her impartiality. In light of the testimony, the trial court denied Simmons's motion for a new trial.

[64]    Under *Smith v. Phillips*, 455 U.S. 209, 215-17 (1982), allegations of juror partiality may be addressed through a hearing at which the defendant has an opportunity to prove actual bias. Although the majority in *Smith* considered only actual bias, most federal circuit courts "endorse the view that the implied bias doctrine retains its vitality after *Smith*." *United States v. Mitchell*, 690 F.3d 137, 144 (3d Cir. 2012) (collecting cases from First, Second, Fourth, Fifth, Sixth, Seventh, Eighth, and Ninth Circuits); *Conaway v. Polk*, 453 F.3d 567, 587 (4th Cir. 2006) ("Nothing in the *Smith* decision, however, indicates that the Court intended to discard the doctrine of implied or presumed bias."). Since the trial court held a hearing and allowed Simmons an opportunity to prove actual or implied bias, it satisfied its duty under *Smith*.

### 1. The trial court did not abuse its discretion in selecting the standard for evaluating Simmons's motion for a new trial

[65]    Simmons contends that the proper standard for evaluating his motion for a new trial is set forth in 8 GCA § 110.30(a), which allows a court to grant a new trial "if required in the interests of justice." Appellant's Br. at 26; 8 GCA § 110.30(a) (2005). He argues that the trial court essentially required him to demonstrate a "fully consummated constitutional violation" to obtain a new trial when it required that he show actual or implied bias, while 8 GCA § 110.30(a) requires "only that a new trial is required in the interests of justice." *See* Appellant's Br. at 26; Appellant's Reply Br. at 9 (Oct. 2, 2024). However, this argument is somewhat undercut by Simmons's own motion for a new trial, in which he asserted that "the instant motion involves juror dishonesty on *voir dire* that violates Defendant's Sixth Amendment right to an impartial jury, thus demanding a modified analysis based on the standard the U.S. Supreme Court announced in *McDonough* . . . to determine when this type of juror misconduct should result in a new trial." *See* RA, tab 66 at 10 (Mot. New Trial). Given how Simmons initially framed the issue, we cannot fault the trial court for adjudicating his motion under the Sixth Amendment standard.

[66]     The trial court did not explicitly address 8 GCA § 110.30(a). *See* RA, tab 93 at 1-6 (Dec. & Order).  However, a constitutional violation falls within the "interests of justice" standard under 8 GCA § 110.30(a).  The trial court has "significant discretion" in determining whether a new trial is warranted in the interests of justice under 8 GCA § 110.30(a).  *See Messier*, 2014 Guam 34 ¶¶ 12-13 (noting trial court's "significant discretion" under 8 GCA § 110.30(a)).  Therefore, the trial court did not abuse its discretion when it concluded that a new trial was not required without a Sixth Amendment violation.

[67]     To determine whether a new trial was warranted, the trial court applied the standard in Justice Rehnquist's plurality opinion in *McDonough*.  This was the very standard Simmons initially urged, arguing his motion "demand[ed]" analysis under *McDonough*.  RA, tab 66 at 10 (Mot. New Trial).  The trial court correctly noted that *McDonough* established a two-prong test to determine when a juror's nondisclosure during voir dire demonstrates bias significant enough to justify a new trial: (1) whether the juror failed to accurately answer a material question during voir dire and (2) whether a correct response would have provided a valid basis for a challenge for cause. *See* RA, tab 93 at 4 (Dec. & Order) (citing *McDonough*, 464 U.S. at 556).  The *McDonough* test, though originating in a plurality opinion, has been widely adopted by lower courts, including federal circuit courts, and has been referenced in later U.S. Supreme Court decisions, reinforcing its applicability. *See*, *e.g.*, *Warger v. Shauers*, 574 U.S. 40, 45 (2014).  Thus, the trial court did not abuse its discretion by applying the *McDonough* test to consider Simmons's motion for a new trial.

**2.  We adopt an objective and flexible approach to applying the *McDonough* test**

[68]     The *McDonough* plurality explained that a new trial is warranted only if the juror's nondisclosure during voir dire was dishonest, rather than merely mistaken.  *See McDonough*, 464 U.S. at 555.  The five concurring Justices, however, declined to treat dishonesty as dispositive of

juror bias. *See id.* at 556-57 (Blackmun, J., joined by Stevens and O'Connor, JJ., concurring); *id.* at 557-59 (Brennan, J., joined by Marshall, J., concurring in judgment). Justice Blackmun, joined by Justices Stevens and O'Connor, maintained that dishonesty is relevant but not controlling and that courts may also consider surrounding circumstances to determine whether bias is implied. *See id.* at 556-57 (Blackmun, J., concurring). Justice Brennan, joined by Justice Marshall, emphasized that "[b]ecause the bias of a juror will rarely be admitted by the juror himself, . . . it necessarily must be inferred from surrounding facts and circumstances." *Id.* at 557-59 (Brennan, J., concurring in judgment). Because the plurality's view—that dishonesty during voir dire is dispositive of whether there is actual juror bias, thereby warranting a new trial—is not supported by the concurrences, it is persuasive rather than binding on this court. *See Marks v. United States*, 430 U.S. 188, 193 (1977) ("When a fragmented [Supreme] Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds . . . .'" (quoting *Gregg v. Georgia*, 428 U.S. 153, 169 n.15 (1976))).

[69]     Given the fragmented decision in *McDonough*, whether to adopt a more subjective or objective approach when determining juror bias "has not yet been conclusively established by many circuits." *See* Joshua S. Press, *Untruthful Jurors in the Federal Courts: Have We Become Comfortably Numb?*, 21 St. Thomas L. Rev. 253, 271 (2009); *see also Scott v. Arnold*, 962 F.3d 1128, 1132 (9th Cir. 2020) ("'[F]airminded disagreement' currently exists as to the application of *McDonough* . . . ."). While "Justice Rehnquist's plurality opinion raises the assumption that a subjective 'personal honesty' approach should be followed by trial judges, some circuit courts have sided with the five concurring justices in taking a more realistic or objective approach to juror bias and misconduct." Press, *supra*, at 271-72, 272 n.129 (collecting cases). Moreover, "[m]any state courts have reached a similar conclusion that both intentional and unintentional lies may

violate *McDonough*." *Id.* at 272 & n.130 (collecting cases). "Justice Brennan notes that because 'the bias of a juror will rarely be admitted by the juror himself,' it is perfectly reasonable for a trial judge to assess other evidence of bias in light of the surrounding circumstances at voir dire." *Id.* at 271 (quoting *McDonough*, 464 U.S. at 558 (Brennan, J., concurring in judgment)).

[70]     We adopt a more objective and flexible approach to applying the *McDonough* test. The plurality's subjective approach suggests that this court should accept at face value a juror's claim that their inaccurate voir dire answer was mistaken rather than dishonest, which prematurely ends the bias inquiry without considering the surrounding circumstances. This bright-line rule is not appropriate in cases like the present one, where a juror first claims a mistake but later consciously omits the truth after realizing the error. Such an approach could open the door for jurors to lie about preexisting relationships with witnesses, allowing them to simply claim they were initially mistaken if they are ever confronted. To ensure a thorough review of potential juror bias, courts may consider the surrounding circumstances, as suggested by the five concurring Justices in *McDonough*. The trial court's evaluation of the testimony at the evidentiary hearing was consistent with an objective and flexible approach to applying *McDonough*.

### 3. The trial court did not abuse its discretion in its application of the *McDonough* test

[71]     The trial court's analysis began by noting that "[t]here is no dispute that the juror did not answer the question during *voir dire* . . . ." RA, tab 93 at 4 (Dec. & Order). Under the first prong of the *McDonough* test, Juror 12 did not provide an accurate answer to a material question during voir dire. During jury selection, the trial court asked whether potential jurors knew anyone on the witness list, which included J.D. and T.D. Juror 12 did not disclose knowing either witness. The trial court determined that, while Juror 12 failed to mention knowing J.D. and T.D., nothing suggested that this omission was intentional, and the court found the juror's explanation—that she

did not recognize J.D.'s and T.D.'s names on the witness list—"credible and reasonable." RA, tab 93 at 4 (Dec. & Order).

[72]    As we adopt a flexible approach to the *McDonough* test, Juror 12's claim of an honest mistake is not fatal to Simmons's bias claim. A more holistic review allows this court to consider the surrounding circumstances to assess whether there is evidence of implied bias. The trial court satisfied this standard.

### a.  Assessing "actual bias"

[73]    Under the second prong of the *McDonough* test, the trial court explained that the defendant must demonstrate that a truthful answer from the juror would have provided a valid basis to strike the juror for cause by showing actual or implied bias. *See id.* at 4 (citing *Gonzalez*, 214 F.3d at 1112). The trial court defined actual bias as a situation where "the juror is in fact biased for or against one of the parties, thereby precluding her from rendering a fair and impartial verdict." *Id.* at 5 (citing *United States v. Gonzalez*, 906 F.3d 784, 796 (9th Cir. 2018)). The trial court found no evidence of actual bias, stating that it had the opportunity to observe and assess the juror's credibility and found her explanations reasonable, given the extended break in the working relationship and minimal contact with the witnesses. *Id.* at 4-5.

[74]    On appeal, Simmons argues that "although Juror 12's initial failure to disclose may have been unintentional, her continued non-disclosure once she recognized the witnesses during trial was admittedly intentional." Reply Br. at 18. Simmons contends that the trial court therefore should not have required proof of "actual bias." *Id.* (citing *English v. Berghuis*, 900 F.3d 804, 813 (6th Cir. 2018)). While we agree, the trial court's inquiry did not end with a finding of no actual bias; it considered the surrounding circumstances to assess whether implied bias was present, as shown by the trial court's consideration of the totality of the circumstances. *See* RA, tab 93 at 4-5 (Dec. & Order).

### b. Assessing "implied bias"

[75]    The trial court further explained the implied bias doctrine, noting that bias will be conclusively presumed in certain situations, even if the juror insists on their impartiality. *Id.* at 5 (citing *Gonzalez*, 906 F.3d at 797). The court cited the Ninth Circuit's standard, under which "juror bias will be presumed only in the extreme situation where the relationship between a prospective juror and some aspect of the litigation is such that it is highly unlikely that the average person could remain impartial in their deliberations under the circumstances." *Id.* (citing *United States v. Kvashuk*, 29 F.4th 1077, 1092 (9th Cir. 2022)). The trial court concluded that "the relationship between the juror and the issues of this case [was] too tenuous to meet the 'extreme situation' standard established by the Ninth Circuit." *Id.* Because the trial court determined that Simmons did not show either actual or implied bias, it denied his motion for a new trial. *Id.* at 5-6.

[76]    The majority rule among the federal circuit courts is that juror bias is presumed only in "extreme" or "exceptional" circumstances where the average person would be highly unlikely to remain impartial under the facts. *See Amirault v. Fair*, 968 F.2d 1404, 1405-06 (1st Cir. 1992) (per curiam); *United States v. Torres*, 128 F.3d 38, 45-46 (2d Cir. 1997); *Mitchell*, 690 F.3d at 142-43; *Person v. Miller*, 854 F.2d 656, 664 (4th Cir. 1988); *Solis v. Cockrell*, 342 F.3d 392, 395 (5th Cir. 2003); *Johnson v. Luoma*, 425 F.3d 318, 326 (6th Cir. 2005); *Hunley v. Godinez*, 975 F.2d 316, 318-19 (7th Cir. 1992) (per curiam); *Manuel v. MDOW Ins. Co.*, 791 F.3d 838, 843-44 (8th Cir. 2015); *United States v. Mitchell*, 568 F.3d 1147, 1151 (9th Cir. 2009); *United States v. Cerrato-Reyes*, 176 F.3d 1253, 1260-61 (10th Cir. 1999), *abrogated on other grounds by United States v. Duncan*, 242 F.3d 940 (10th Cir. 2001); *Gaskin v. Sec'y, Dep't of Corr.*, 494 F.3d 997, 1004-05 (11th Cir. 2007) (per curiam); *Smith*, 455 U.S. at 221-22 (O'Connor, J., concurring) (expressing view that majority opinion does not preclude finding of implied juror bias, as matter

of law, in "extreme situations"). Courts also consider whether the facts underlying the alleged bias would create an inherent risk of substantial emotional involvement in a juror, "adversely affecting impartiality." *See Gonzalez*, 214 F.3d at 1112; *Mitchell*, 690 F.3d at 143; *see also United States v. Polichemi*, 219 F.3d 698, 704 (7th Cir. 2000) (explaining that in certain situations, a juror "may well be objective in fact, but the relationship is so close that the law errs on the side of caution"). Thus, the trial court did not err in applying the standard set forth by the Ninth Circuit in determining whether there was evidence of implied bias.

### 4. The trial court's decision is entitled to deference under the abuse of discretion standard of review

[77]     When reviewing a trial court's denial of a motion for a new trial under the abuse of discretion standard, "this court will not simply 'substitute its judgment for that of the trial court.'" *Bosi*, 2022 Guam 15 ¶ 71 (citation omitted).  Instead, this court reviews "whether the trial court's decision was allowable." *See id.* ¶ 66.

[78]     Here, the undisputed evidence shows that Juror 12 and J.D. were former coworkers who worked in the same five-person department for years and attended several of each other's family events outside of work.  J.D. is also the grandmother of both alleged victims and the legal guardian of one of them, and the alleged instances of abuse occurred in her home.  During the evidentiary hearing, neither Juror 12 nor J.D. claimed to be close friends, and Juror 12 stated that their relationship had not been close in recent years.  By contrast, T.D. claimed Juror 12 and J.D. were close, longtime friends.  After reviewing the testimony, the trial court found that the relationship between Juror 12 and the issues of the case were "too tenuous" and that Juror 12 was likely impartial in her deliberations. *See* RA, tab 93 at 5 (Dec. & Order).[8]

---

[8] Considering T.D.'s testimony about the nature of Juror 12's relationship with J.D., a different judge might have reached a different conclusion on the same facts. *See In re People*, 2024 Guam 16 ¶ 104.  It would be reasonable to conclude that an average person would be prejudiced against a defendant accused of molesting the granddaughters

**[79]**     The trial court did not misstate or misapply the law, and its decision was supported by facts on the record. The trial court's decision was allowable under the highly deferential abuse of discretion standard. Therefore, we affirm the trial court's denial of the motion for a new trial.

## C. The Hearsay Testimony of Officer Cruz Was Inadmissible but Harmless

**[80]**     Simmons's third argument on appeal is that "[t]he trial court erred in admitting hearsay evidence through Officer Cruz." Appellant's Br. at 27. He contends that the trial court allowed "Officer Cruz to testify to the content of statements given to him by various witnesses," over defense counsel's objection. *Id.*

**[81]**     Under Guam Rule of Evidence ("GRE") 801, "hearsay" is a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Guam R. Evid. 801(c). Generally, hearsay is inadmissible unless it falls into an exception. *See* Guam R. Evid. 802. "When a statement is offered for its effect on the listener, rather than offered for its truth, that statement is non-hearsay." *People v. Caso*, 2022 Guam 6 ¶ 49 (citing *United States v. Torres*, 794 F.3d 1053, 1059 (9th Cir. 2015)).

### 1.   R.D.'s statement to T.D. and T.D.'s statement to Officer Cruz

**[82]**     Officer Cruz testified that his preliminary investigation of Simmons began after T.D. reported a complaint of CSC. When Officer Cruz began to describe what T.D. explained to him, defense counsel objected to hearsay. Tr. at 28-29 (Jury Trial, Day 2) (while Officer Cruz testified, "She explained to me that--," Defense counsel interjected, "I--objection, Your Honor, hearsay."). The prosecutor argued that the testimony "goes to the state of mind . . . of the witness . . . as to

---

of her close, longtime friend in that friend's home. It would also be reasonable to conclude that Juror 12's implied bias is further supported by her failure to disclose knowing two witnesses when she recognized them on the stand. "But under the abuse-of-discretion standard, we cannot substitute our judgment for that of the trial court." *Lujan v. Tebo*, 2024 Guam 15 ¶ 32 (per curiam) (citing *People v. Quintanilla*, 2001 Guam 12 ¶ 9). Given the highly deferential abuse of discretion standard, this court defers to the trial court's findings. *See id.* ("The question before us is 'whether the trial court's decision was allowable.'" (quoting *People v. Bosi*, 2022 Guam 15 ¶ 66)).

what actions he took later as a result of his investigation," and the trial court overruled the objection without further discussion. *Id.* at 29. Officer Cruz ultimately testified that "[s]he explained to me that she was informed by her daughter that she was sexually assaulted by her stepfather." *Id.* He later clarified that R.D. made this statement to her mother about Simmons. *Id.* Although Officer Cruz testified to additional out-of-court statements, Simmons identifies only this objection in the record in the argument section of his opening brief. *See* Appellant's Br. at 27-28; Guam R. App. P. 13(a)(9)(C) (requiring that argument section of appellant's brief state where in record any trial objection and ruling appear, when necessary to preserve issue for appeal).

[83] This testimony involved two layers of hearsay: (1) R.D.'s statement to her mother and (2) the mother's statement to Officer Cruz. Hearsay within hearsay is admissible only if each part of the statement qualifies under a hearsay exception. *See* Guam R. Evid. 805. However, only one layer of hearsay has been discussed at trial or on appeal. Defense counsel objected to the testimony before it became clear that there were two layers of hearsay, and he did not re-raise his objection after Officer Cruz completed his statement. *See* Tr. at 29 (Jury Trial, Day 2). On appeal, the People maintain that the statement was not hearsay because it was not offered for the truth of the matter asserted; however, they fail to distinguish between the two layers of out-of-court statements. *See* Appellee's Br. at 27-29. Instead, the People broadly claim that "[t]he statements made from [R.D.] to her mother were admissible to explain how the police came to investigate Simmons for the sexual assault of [R.D.]." *Id.* at 28. Even if the People had more clearly argued that both (1) R.D.'s statement to her mother and (2) the mother's statement to Officer Cruz were each offered for the effect on the listener (i.e., to explain why the mother filed a complaint with Officer Cruz and why Officer Cruz investigated Simmons), this argument would fail given this court's precedent, as explained below.

### 2. R.C.'s statement to Officer Cruz

[84]    Officer Cruz also testified that R.D.'s sister, R.C., approached him with "tears coming down her face and explaining that she was also assaulted by her stepfather." Tr. at 30 (Jury Trial, Day 2). Defense counsel did not object to this statement, *see id.* at 30-31, and Simmons did not explicitly discuss this statement in the argument section of his opening brief, Appellant's Br. at 27-28; *see also* Guam R. App. P. 13(a)(9)(C). However, the People addressed this statement in their opposition brief, arguing that "[t]he statements made from [R.C.] to Officer Cruz were admissible to explain how the police came to investigate Simmons for the sexual assault of [R.C.]." Appellee's Br. at 31.

[85]    The People argue that because defense counsel did not object to the introduction of R.C.'s statement to Officer Cruz, the statement should be reviewed for plain error. Appellee's Br. at 31-32 (citing *Morales*, 2022 Guam 1 ¶ 38). Simmons counters that his trial counsel did not object to the introduction of R.C.'s out-of-court statements for futility: "[T]he objection would have been identical and the government's response would have been identical. A defendant does not need to repeatedly ask the trial court to rule on the exact same issue in order to preserve exactly the same claim of error in each instance . . . ." *See* Reply Br. at 19.

[86]    As this court has noted, "[o]ther courts have held that where it is clear from the circumstances that it would be futile to do so, there is no need to preserve an objection on the record." *People v. Vargas*, 2024 Guam 1 ¶¶ 28-29 (finding that motion from the defendant for continuance would have been futile, and so its absence did not inhibit appellate review; applying abuse of discretion rather than plain error standard of review). Even if we assume that the issue was preserved based on Simmons's futility argument, any abuse of discretion in admitting the statement was harmless, as explained below.

### 3. The statements were hearsay, and the trial court abused its discretion in admitting them

[87]     This court has ruled that, "in some instances, information possessed by investigating agents is received at trial not for the truth of the matter, but as 'background' to explain the investigation, or to show an agent's state of mind so that the jury will understand the reasons for the agent's subsequent actions." *Roten*, 2012 Guam 3 ¶ 19 (quoting *United States v. Reyes*, 18 F.3d 65, 70 (2d Cir. 1994)).  But this "background" use of an officer's testimony is subject to limits:

> A police officer . . . may reconstruct the steps taken in a criminal investigation, may testify about his contact with [a witness], and may describe the events leading up to a defendant's arrest, but the officer's testimony must be limited to the fact that he spoke to [a witness] without disclosing the substance of that conversation. *There is a clear distinction between an [officer] testifying about the fact that he spoke to [a witness] without disclosing the contents of the conversation and the agent testifying about the specific contents of the conversation which is inadmissible hearsay*.

*Id.* ¶ 19 (alterations in original) (quoting *United States v. Williams*, 133 F.3d at 1052); *accord People v. Tedtaotao*, 2016 Guam 9 ¶ 20; *Morales*, 2022 Guam 1 ¶ 52.

[88]     This court has rejected the argument that statements to police officers like "he touched me" are admissible as non-hearsay to show the effect on the listener (i.e., why the officer started investigating). *See People v. Perez*, 2015 Guam 10 ¶ 28.  The out-of-court statements by R.D., T.D., and R.C. to which Officer Cruz testified were hearsay.  Officer Cruz testified that T.D. "explained to [him] that she was informed by her daughter [R.D.] that she was sexually assaulted by her stepfather." Tr. at 29 (Jury Trial, Day 2).  The first layer of hearsay is R.D.'s statement to her mother.  This is an out-of-court statement being introduced to prove the truth of the matter asserted—that Simmons sexually abused her.  The second layer of hearsay is the mother's statement to Officer Cruz.  This is also an out-of-court statement offered to prove that the daughter

did make that statement to her.[9]  Officer Cruz also testified that R.C. "explain[ed] that she was also assaulted by her stepfather." *Id.* at 30.  This is another out-of-court statement offered to prove the truth of the matter asserted—that Simmons also assaulted R.C.

[89]    We are increasingly concerned by the recurring instances of law enforcement witnesses testifying to the substance of clearly inadmissible out-of-court conversations in violation of our precedent.  We sternly caution prosecutors to take all necessary measures to ensure that witness testimony complies with the Guam Rules of Evidence.  As repeatedly emphasized by this court, officers may testify only to the fact that they spoke with a declarant or took action based on a report—and not to the substance of any out-of-court conversation—unless every layer of that statement independently satisfies a recognized hearsay exception.  Continued disregard for these standards may compel this court to consider more severe remedies to safeguard the fairness of criminal trials.[10]

[90]    Here, the People maintain that Officer Cruz's testimony about these out-of-court statements was admissible as non-hearsay under *People v. Caso*, 2022 Guam 6.  Appellee's Br. at

---

[9] The truth of the matter asserted is that the daughter actually told her mother about the abuse.  If the People were arguing that this statement was not true (e.g., that the mother was lying or mistaken about what her daughter told her), then the statement would have no evidentiary value.  *See, e.g.*, *United States v. Hathaway*, 798 F.2d 902, 905 (6th Cir. 1986) ("[W]hen a statement is offered to prove neither the truth nor falsity, there is no need to assess the credibility of the declarant.  The significance lies entirely in the fact that the words were spoken.").  However, that is not the case here.  The significance of the statement is not merely that the words were spoken, but that it proves the truth of what the statement asserts.

[10] Although we conclude below that the error in this case was harmless, in future cases where a witness's credibility is dispositive—such as when a single victim's testimony alone links a defendant to the charged conduct—reversal may be required if improperly admitted evidence serves to bolster that testimony.  *See People v. Sharpe*, 2024 Guam 12 ¶¶ 60-61.  We also note that admitting hearsay statements can implicate the Sixth Amendment and Organic Act rights to confrontation.  *See People v. Tedtaotao*, 2016 Guam 9 ¶ 23 ("[A] law enforcement officer's testimony repeating out-of-court statements to prove the truth of the matter presented is improper on hearsay and confrontation grounds." (collecting cases)).  To safeguard these rights and deter repeated violations, this court will consider crafting prophylactic rules to prevent such constitutional errors from recurring.  *See, e.g.*, *United States v. Gaines*, 555 F.2d 618, 624 (7th Cir. 1977) ("[S]tate courts are empowered to establish prophylactic rules in order to ensure compliance with state constitutional provisions."); *State v. Dickson*, 141 A.3d 810, 825 n.11 (Conn. 2016) ("[I]t is well established that courts have the duty not only to craft remedies for actual constitutional violations, but also to craft prophylactic constitutional rules to *prevent* the significant risk of a constitutional violation." (collecting cases)).  *But cf. Tatum v. Comm'r of Corr.*, 322 A.3d 299, 302, 312-17 (Conn. 2024) (disagreeing with dictum in *State v. Dickson*, 141 A.3d 810 (Conn. 2016), that the new rule established in *Dickson* would not apply retroactively on collateral review).

28-29, 32 (citing *Caso*, 2022 Guam 6 ¶ 49). However, that case involved analysis of GRE 801(d)(1)(C), under which a prior statement by a witness identifying a person is definitionally "not hearsay." *See Caso*, 2022 Guam 6 ¶¶ 48-49 (citing Guam R. Evid. 801(d)(1)(C)). GRE 801(d)(1)(C) applies to recognizing and identifying a person (e.g., picking someone out of a lineup), not general accusations of misconduct. Here, GRE 801(d)(1)(C) is inapplicable to the out-of-court statements of R.D. and R.C. because those statements were allegations of abuse and not ones identifying a person.

[91]    Because the out-of-court statements by R.D., T.D., and R.C.[11] were inadmissible hearsay, the trial court abused its discretion in admitting this testimony. *See Perez*, 2015 Guam 10 ¶ 25 (citing *Roten*, 2012 Guam 3 ¶¶ 24, 47, 50). However, the errors do not warrant reversal under the harmless error standard.

### 4. Reversal is not required because the errors were harmless

[92]    When the trial court has abused its discretion in admitting certain evidence, this court applies the harmless error standard to determine whether reversal is required. *See Roten*, 2012 Guam 3 ¶ 41. For non-constitutional errors, the default rule is that reversal is required unless the prosecution proves the error was harmless by demonstrating that it is "more probable than not that the error did not materially affect the verdict." *Jesus*, 2009 Guam 2 ¶ 54. The prosecution bears the burden of proving harmlessness. *See Meseral*, 2014 Guam 13 ¶ 42. "A harmless error inquiry typically involves analysis of numerous factors, including: (1) the overall strength of the prosecution's case; (2) the prosecutor's conduct with respect to the improperly admitted evidence; (3) the importance of the wrongly admitted evidence; and (4) whether such evidence was

---

[11] Assuming the challenge to R.C.'s testimony was preserved.

cumulative of other properly admitted evidence." *Roten*, 2012 Guam 3 ¶ 41 (citing *Garcia*, 413 F.3d at 217).

[93]    In *People v. Roten*, 2012 Guam 3, we found persuasive the Second Circuit's approach to harmless error, which it "distilled from relevant Supreme Court precedent." *Garcia*, 413 F.3d at 217. The Second Circuit has emphasized that "[t]he strength of the prosecution's case without the erroneously admitted evidence 'is probably the single most critical factor in determining whether the error was harmless.'" *Jackson v. Conway*, 763 F.3d 115, 140 (2d Cir. 2014) (quoting *Wood v. Ercole*, 644 F.3d 83, 94 (2d Cir. 2011)); *United States v. Hendricks*, 921 F.3d 320, 330 (2d Cir. 2019) ("The strength of the prosecution's case is the most important factor."). As the Supreme Court has instructed, this determination requires examining "the trial record as a whole." *United States v. Hasting*, 461 U.S. 499, 509 (1983); *see also People v. Pugh*, 2018 Guam 14 ¶ 26 n.4 ("'Harmless error determinations are highly fact-specific,' and 'often involve a review of the entire trial record.'" (quoting *Inthavong v. Lamarque*, 420 F.3d 1055, 1060 (9th Cir. 2005))). However, the Second Circuit has also cautioned that "the mere fact that the properly admitted evidence, standing alone, would have been sufficient to support the conviction is not determinative . . . ." *Wray v. Johnson*, 202 F.3d 515, 526 (2d Cir. 2000); *see also Kotteakos v. United States*, 328 U.S. 750, 765 (1946) ("The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error.").[12]

---

[12] This is not to say we cannot consider whether "the prosecution's case was strong enough to support a conviction exclusive of the . . . hearsay statement." *People v. Perez*, 2015 Guam 10 ¶ 36. However, the mere fact that "the prosecution's case was strong enough to support a conviction even without the erroneously admitted evidence," *Bosi*, 2022 Guam 15 ¶ 57 (citing *Perez*, 2015 Guam 10 ¶ 36), does not necessarily mean the prosecution's case was strong, *see, e.g.*, *State v. Singh*, 793 A.2d 226, 246 (Conn. 2002) ("[T]he state's evidence, while sufficient to result in a conviction, was not particularly strong."). The standard for legal sufficiency of the evidence represents only the minimum threshold for sustaining a conviction, as it requires the court to draw every reasonable inference in favor of the prosecution. *See Hosei*, 2023 Guam 22 ¶¶ 45-47; *see also United States v. Mejia*, 545 F.3d 179, 199 n.5 (2d Cir. 2008) (noting that Supreme Court has not resolved whether harmless error analysis requires viewing evidence in light most favorable to the prosecution or to the defendant); *Schneble v. Florida*, 405 U.S. 427, 435 (1972) (Marshall, J., dissenting) ("[A]ll reasonable inferences that might be drawn from the evidence must be drawn in favor of the defendant, since the jury may very well have made just these inferences."). By contrast, "harmless-

[94]    In a "marginal circumstantial" case, the Second Circuit considers whether the wrongly admitted evidence was "the sort of evidence that might well sway a jury." *See United States v. Kaplan*, 490 F.3d 110, 123 (2d Cir. 2007). That court has found prejudice where such evidence could influence a jury in a case "turning solely on the [testimony] of a single witness whose credibility [i]s weak." *United States v. Vayner*, 769 F.3d 125, 134-35 (2d Cir. 2014) (finding error prejudicial "[b]ecause the wrongly admitted evidence was 'the sort of evidence that might well sway a jury'" (quoting *Kaplan*, 490 F.3d at 123)). As the Second Circuit has explained, "Where the erroneously admitted evidence goes to the heart of the case against the defendant, and the other evidence against the defendant is weak, we cannot conclude that the evidence was unimportant or was not a substantial factor in the jury's verdict." *United States v. Grinage*, 390 F.3d 746, 751 (2d Cir. 2004).

[95]    In *Roten*, this court held that the trial court abused its discretion in admitting an officer's testimony regarding the victim's statements in a CSC case because it was inadmissible hearsay, but found this error harmless. *See* 2012 Guam 3 ¶¶ 24, 42-43, 50. We emphasized that "[t]he policy that underlies the general hearsay rule is avoiding admission of out-of-court statements not susceptible to the rigors of cross-examination," and noted that "the person whose statement was being introduced as hearsay (i.e., the victim) did indeed testify at trial and was subject to a lengthy cross-examination by Roten's trial counsel." *Id.* ¶ 42. This court also concluded that the officer's testimony was "essentially identical to that provided by the victim." *Id.* ¶ 43 ("[T]he victim's testimony discussed three separate incidents of sexual assault, and [the officer] testified that the

---

error analysis is not merely a review of whether the jury 'could have' returned a verdict absent the . . . error. Such an analysis improperly conflates sufficiency-of-the-evidence review [with harmless error]." *See Virgin Islands v. Martinez*, 620 F.3d 321, 338 (3d Cir. 2010). The prosecution's case is considered strong when, after setting aside the erroneously admitted evidence, there remains "weighty" or "overwhelming" evidence of guilt. *See Glenn v. Bartlett*, 98 F.3d 721, 729 (2d Cir. 1996); *Tedtaotao*, 2016 Guam 9 ¶ 50; *Mejia*, 545 F.3d at 199 n.5 (discussing evolution of Second Circuit's harmless error jurisprudence); Michael H. Graham, 2 *Handbook of Fed. Evid.* § 103:1 (9th ed., 2024 Update).

victim reported three discrete incidents of sexual assault."). Accordingly, this court concluded that the erroneously admitted hearsay was "relatively unimportant as well as cumulative," and its admission was harmless. *Id.*

[96]     Our decision in *Roten* also addressed the erroneous admission of separate testimony from the officer that bolstered the victim's credibility. *See id.* ¶¶ 44-49. We observed that, even setting aside the officer's bolstering testimony, the prosecution's case was strong, in part because the record contained an admission by the defendant that sexual contact had occurred. *See id.* ¶ 47. We further noted that "the victim testified at great length and in great detail while [the officer's] testimony was brief." *Id.* ¶ 46. Ultimately, we concluded the error was harmless, holding that "[t]ouching upon *Garcia*'s first and third factors, the improperly admitted testimony was not so overwhelmingly important as to outweigh the strength of the People's case." *Id.* ¶ 49.

[97]     *People v. Perez*, 2015 Guam 10, was another CSC case where this court held that the trial court's erroneous admission of hearsay testimony was harmless because "all four factors weigh in favor of the People." 2015 Guam 10 ¶ 38. We concluded that the prosecution's case was strong, as the victim "gave extensive testimony regarding the details of the sexual assaults," in addition to other circumstantial evidence. *Id.* ¶ 36.[13] We added that the hearsay statement "he touched me" provided "little specific detail regarding the sexual assaults compared to [the victim's] direct testimony, and was comparatively inconsequential to the prosecution's case." *Id.* ¶ 37. We also

---

[13] In *Perez*, we concluded our harmless error analysis by stating: "Evidence supporting the guilty verdict other than the hearsay statement was presented." *People v. Perez*, 2015 Guam 10 ¶ 36. While such evidence weighs in favor of a finding of harmlessness, legal sufficiency alone is not dispositive. Indeed, where erroneously admitted evidence is the only proof supporting the verdict, such an error would almost certainly be prejudicial. The prosecution's case in *Perez* was strong not merely because the evidence was legally sufficient, but because the victim gave extensive testimony and additional circumstantial evidence corroborated her account. *Id.* While a CSC victim's testimony need not be corroborated to sustain a conviction under Guam law, it is evident that a prosecution's case is stronger when such testimony is supported by corroborating evidence.

found that the "testimony was cumulative of other properly admitted evidence" because the victim "testified at length about the details and frequency of the sexual assaults." *Id.* ¶ 38.

[98]    Here, the trial court's error was similarly harmless. As to the first factor of the harmless error test, the People argue that "the prosecution's case, while circumstantial, was strong considering there were two different victims alleging criminal sexual conduct." Appellee's Br. at 31. However, defense counsel's closing questioned the credibility of R.D.'s and R.C.'s allegations by highlighting inconsistencies within and between various witnesses' testimonies. *See* Tr. at 16-38 (Jury Trial, Day 4). Defense counsel also noted the number of people present in the living room with Simmons and the girls during the alleged abuse, questioning how Simmons could have committed the acts unnoticed, especially given R.D.'s claim he did so every other day for over a month. *Id.* at 29, 34-36. Given the People's concession that this is a circumstantial case, we must consider whether the wrongly admitted evidence was "the sort of evidence that might well sway a jury." *See Kaplan*, 490 F.3d at 123.

[99]    A review of the trial record as a whole demonstrates that, even without the erroneously admitted evidence, there remained direct testimony from two victims regarding the details of the criminal sexual conduct, as well as other circumstantial evidence of Simmons's guilt. Although the defense challenged the victims' credibility at trial, Simmons does not argue that the hearsay statements constituted improper bolstering. This is not a case "turning solely on the word of a single witness whose credibility was weak." *See Vayner*, 769 F.3d at 134-35. Nor is this a case where a child "made a poor witness," such that the police officer's repetition of the child's out-of-court statements became the prosecution's primary or more persuasive evidence. *Cf.* Roger C. Park & Aviva Orenstein, *Trial Objections Handbook 2d* § 4:10 (Sep. 2025 Update); *Sharpe*, 2024 Guam 12 ¶ 22 n.6 ("[I]n some types of cases, especially those involving child victims, repetition of out-of-court statements can be very powerful." (quoting Park & Orenstein, *supra*)). All of the

hearsay declarants testified at trial and were subject to cross-examination from defense counsel. *See Roten*, 2012 Guam 3 ¶ 42. The victims testified in far greater detail about the sexual conduct, while the officer's hearsay testimony was brief. *See id.* ¶ 46. The isolated hearsay statements repeated by the officer were "essentially identical" to testimony provided by the victims, and any bolstering effect was negligible.[14] *See id.* ¶ 43. The child witnesses were credible witnesses in their own right who provided generally consistent narratives of the alleged touching, offering significantly more detail than the hearsay statements elicited from Officer Cruz. *See* Tr. at 13-14, 17-18, 44-46 (Jury Trial, Day 3, Mar. 11, 2022) (R.D.'s testimony); Tr. at 122-23, 126-29 (Jury Trial, Day 2) (R.C.'s testimony). The erroneously admitted evidence neither went "to the heart of the case against the defendant" nor was it "the sort of evidence that might well sway a jury." *See Vayner*, 769 F.3d at 134-35. The first factor weighs in favor of the People.

[100] As for the second factor of the harmless error test, the People note that the prosecutor did not ask Officer Cruz any follow-up questions regarding the out-of-court disclosures, nor did the prosecutor refer to the hearsay statements during closing arguments. *See* Appellee's Br. at 2, 29, 32; Tr. at 28-31, 36-38 (Jury Trial, Day 2); Tr. at 9-16, 38-42 (Jury Trial). We agree that the record shows the prosecution made no further use of the hearsay testimony, and we therefore conclude that the second factor weighs in favor of harmlessness. As for the third and fourth factors, the People argue that the testimony was "unimportant and cumulative because T.D., [R.D.], and [R.C.]

---

[14] This conclusion is underscored by the fact that Simmons does not argue the hearsay testimony impermissibly bolstered the victims' credibility. We have previously cautioned that repetition of out-of-court statements by law enforcement officers can exert a "uniquely powerful" bolstering effect "due to the high regard for their institution." *Tedtaotao*, 2016 Guam 9 ¶ 26. To some extent, any time a police officer repeats an out-of-court statement, it bears on the credibility of the original declarant. To determine harmlessness in such cases, we agree with the Georgia courts that the critical inquiry is whether the improperly admitted statements "added critical weight to [the victim's] testimony." *Cash v. State*, 669 S.E.2d 731, 735 (Ga. Ct. App. 2008); *see also Tedtaotao*, 2016 Guam 9 ¶ 26 (citing *Gaston v. State*, 731 S.E.2d 79, 81 (Ga. Ct. App. 2012)). We reiterate our warning to prosecutors to take appropriate measures to prevent eliciting testimony from law enforcement officers that violates the Guam Rules of Evidence.

all reiterated the[] circumstances of the disclosure[s] in their own testimonies." Appellee's Br. at 31. We agree. While Officer Cruz's hearsay testimony provided minimal detail about the allegations, R.D., R.C., and T.D. each offered more detailed accounts of the same allegations. Accordingly, we find the hearsay statements were unimportant and cumulative.

[101] We conclude that the People have met their burden to show, by a preponderance of the evidence, that the trial court's error in admitting Officer Cruz's hearsay testimony was harmless. Accordingly, although the trial court erred in admitting this evidence, the evidence does not require reversal.[15]

## V. CONCLUSION

[102] The Superior Court did not abuse its discretion when it gave a "non-corroboration" instruction that the Appellate Division and Ninth Circuit had approved. The instruction was not misleading when considering the jury instructions as a whole.

[103] The trial court also did not abuse its discretion in applying the *McDonough* test when evaluating Simmons's motion for a new trial. We adopt a flexible approach to the *McDonough* standard, considering the surrounding circumstances to determine whether there is evidence of actual or implied bias. We further adopt the majority rule that implied juror bias is presumed only in "extreme" or "exceptional" circumstances where an average person in the juror's position would be highly unlikely to remain impartial. The trial court applied the correct legal standard, and its factual findings are supported by the record. Given the highly deferential abuse of discretion

---

[15] Our conclusion would be the same under a plain error analysis. Under plain error review, it is the defendant who bears the burden of showing that his substantial rights were affected. *People v. Kusterbeck*, 2024 Guam 3 ¶ 13. The fact that the People have met their burden of showing that the errors were harmless necessarily means that Simmons would fail to prove he was prejudiced. *See People v. Perry*, 2009 Guam 4 ¶ 34 (suggesting plain error review "requires the same kind of inquiry" as harmless error analysis "with one important difference: *It is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice.*" (quoting *United States v. Olano*, 507 U.S. 725, 734 (1993)).

standard, we defer to the trial court's determination. The trial court did not abuse its discretion when it denied Simmons's motion for a new trial.

**[104]** The trial court erred in admitting Officer Cruz's testimony over defense counsel's hearsay objection. The statements to the officer that Simmons committed the crimes charged were offered for their truth, not the effect on the listener. However, the admission of these hearsay statements was harmless.

**[105]** We **AFFIRM**.


|              /s/              |              /s/              |
| :---------------------------: | :---------------------------: |
|     F. PHILIP CARBULLIDO      |     KATHERINE A. MARAMAN      |
|       Associate Justice       |       Associate Justice       |

|              /s/              |
| :---------------------------: |
|       ROBERT J. TORRES        |
|         Chief Justice         |